UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.: 10-21667-COOKE/BANDSTRA

MARLENIS SMART,

    Plaintiff,
vs.

CITY OF MIAMI BEACH, FLORIDA,
a political subdivision,

    Defendant.
_____/

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

    The Defendant, the City of Miami Beach, hereby submits its motion for summary judgment and supporting memorandum law. Summary judgment in the City's favor is appropriate as the undisputed material facts establish that the alleged sexual harassment was not sufficiently severe or pervasive to be actionable and that the City took prompt and reasonable remedial action upon learning of the allegations. Summary judgment is appropriate as to the gender discrimination and retaliation allegations as the City's decisions were all based on legitimate, non-discriminatory and non-retaliatory reasons and, in addition, some of the allegations are untimely. Finally, the Section 1983 claims are also due to be dismissed as the Plaintiff cannot establish the requisite municipal liability. In further support of its motion, the City states:

    1.    In her second amended complaint, the Plaintiff, Marlenis Smart, asserts a total of six counts all involving allegations of sexual harassment, gender discrimination and retaliation arising under Title VII of the Civil Rights Act of 1964, the Florida Civil Rights Act ("FCRA") and the Equal Protection clause of the United States Constitution (via 42 U.S.C. § 1983). More specifically, in counts I and IV, the Plaintiff contends that she was subjected to unlawful sexual/gender harassment in violation of Title VII, the FCRA and Section 1983. In counts II and V, she contends that she was subjected to gender discrimination in violation of Title VII, the FCRA and Section 1983. Finally, in

counts III and VI, she asserts that she was subjected to unlawful retaliation in violation of Title VII, the FCRA and Section 1983. As detailed below, the City is entitled to summary judgment in its favor as each of these claims.

2. With respect to her allegations of sexual harassment, the Plaintiff contends that she was subjected to belittling comments from co-workers at the outset of her training in 2005, that an unidentified person placed her bra (which she is unsure whether dropped out of her bag or was taken from it) over the back of a piece of furniture on one occasion, that she was the topic of rumors, that she once heard an unidentified male's voice while she was in the shower at the fire station, and that she allegedly found semen on an article of her clothing at the station.

3. With respect to her allegations of gender discrimination and retaliation, the Plaintiff contends that she was unlawfully placed on remedial training in February 2008, was suspended for 10 shifts in May 2008, was not given a transfer to rescue operations in May 2008, was reported to the Department of Health in June 2008, was threatened by an unidentified individual who placed a threatening flyer in her bunker gear in August 2008, was yelled at by another co-worker in January 2009, and was unable to take the Firefighter II promotional test in January 2009 due to the City allegedly losing her employment file.

4. The Plaintiff's sexual harassment claims are due to be dismissed for several reasons. First, her allegations, even if true, are not sufficiently severe or pervasive to establish a cause of action. Second, as soon as the Plaintiff made any complaints alleging inappropriate activity, the City investigated the concerns and took prompt remedial action reasonably designed to correct and prevent such conduct in the future.

5. The Plaintiff's gender discrimination claims are also due to be dismissed for several reasons. First, a number of the alleged discriminatory acts occurred outside of the applicable statute of limitations period. Second, all of the City's decisions concerning the Plaintiff's employment were predicated upon legitimate, non-discriminatory reasons.

6. The Plaintiff's retaliation claims are likewise due to be dismissed as several of the complained-of decisions fall outside the statute of limitations and because the City's decisions were all based on legitimate, non-retaliatory reasons.

7. Moreover, the Plaintiff's Section 1983 retaliation claim fails as applicable case law makes clear that the Equal Protection clause does not provide a cause of action for retaliation. *Jolivette v. Arrowood*, 180 Fed. Appx. 883, 887, 2006 WL 1308626 (11th Cir. May 12, 2006) (citing *Ratliff v. DeKalb County, Ga.*, 62 F.3d 338, 340 (11th Cir. 1995)); *Russell v. Public Health Trust of Miami-Dade County*, 2009 WL 936662, *10 (S.D. Fla. Apr. 6, 2009).

8. Finally, all of Plaintiff's Section 1983 claims are also properly dismissed as the Plaintiff cannot establish that the City maintained a custom or policy of unlawful harassment, discrimination or retaliation, nor can the Plaintiff establish that a final policymaker is responsible for any alleged unlawful actions. Accordingly, even if the Plaintiff could otherwise establish harassment, discrimination or retaliation, she cannot establish municipal liability for such conduct. *Monell v. Dept. of Soc. Serv.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Summers v. City of Dothan*, 2010 WL 4386518 (M.D. Ala. Oct. 29, 2010) (quoting *Denno ex. rel Denno v. Sch. Bd. of Volusia County, Florida,* 218 F.3d 1267, 1276 (11th Cir.2000).

9. Pursuant to Local Rule 7.5(c), the City has contemporaneously filed its Statement of Material Facts in support of this motion. Additionally, to more fully support its motion, the City submits the following Memorandum of Law.

## MEMORANDUM OF LAW

### I. The Plaintiff's Sexual/Gender Harassment Claims Must Be Dismissed

As noted above, the Plaintiff asserts that the City is liable for unlawful sexual harassment under Title VII, the FCRA and Section 1983. At the outset, it should be noted that the courts evaluate Title VII, FCRA and Section 1983 claims using the same substantive standards. *Maniccia v. Brown*, 171 F.3d 1364 (11th Cir. 1999), *Valenzuela v. GlobeGround North America, LLC* , 18 So.3d 17, 21-26 (Fla. 3d DCA 2009); *Labati v. University of Miami*, 16 So.3d 886, 886-87 (Fla. 3d DCA 2009)*; Griffin v. City of Opalocka,* 261 F.3d 1295, 1312 (11th Cir. 2001); *Watkins v. Bowden,* 105 F3d. 1344,

1355 n.19 (11th Cir. 1997); *Arrington v. Cobb County*, 139 F.3d 865, 873 (11th Cir. 1998).

To establish a claim of sexual harassment based upon harassment by a co-worker, a plaintiff must prove: (1) that she is a member of a protected group; (2) that she was subjected to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment was based on her gender; (4) that the harassment was sufficiently severe or pervasive to alter the terms or conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer knew or should have known of the harassment and failed to take prompt remedial action. *Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1245 (11th Cir. 1999); *Breda v. Wolf Camera & Video*, 222 F.3d 886, 889, n.3 (11th Cir. 2000); *Natson v. Eckerd Corp., Inc.*, 885 So. 2d 947 (Fla. 4th DCA 2004); *Russell v. KSL Hotel Corp.*, 887 So. 2d 372, 377-78 (Fla. 3d DCA 2004); *Castleberry v. Edward M. Chadbourne, Inc.*, 810 So. 2d 1028, 1029-30 (Fla. 1st DCA 2002).

Importantly, as the United States Supreme Court has repeatedly made clear, the anti-harassment laws should not be construed as creating a general "civility code" for the workplace. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("A recurring point in these opinions is that 'simple teasing,' offhand comments or other isolated incidents (unless extremely serious) will not amount to discriminatory changes in 'terms or conditions of employment'"); *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) ("We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations*")*; *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) ("[N]ot all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII"); *Mendoza*, 195 F.3d at 1245.

To this end, the *Faragher* Court further noted, "ordinary tribulations of the workplace, such as sporadic use of abusive language, gender-related jokes, and occasional teasing" cannot form the basis of a claim for actionable harassment. *Faragher*, 524 U.S. at 788. Rather, "conduct must be *extreme* to amount to a change in terms and conditions of employment[.]" *Faragher*, 524 U.S. at 788 (emphasis supplied).

The *Oncale* Court instructs that the goal of preventing Title VII from becoming a "general civility code for the American workplace" is properly achieved by "careful attention to the requirements of the statute." *Oncale*, 523 U.S. at 80.

In the present case, a review of the evidence in the light most favorable to Smart reveals that she was not subjected to actionable sexual harassment as the evidence fails to establish that the complained-of conduct was severe or pervasive. Additionally, the evidence shows that the City took to prompt remedial action once Smart complained of harassment.

> A. The Allegations of Which the Plaintiff Complains are Not Severe nor Pervasive

"Establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component." *Mendoza*, 195 F.3d at 1246 (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)); *Faragher*, 524 U.S. at 787. In assessing this element, the courts look to the totality of the circumstances and review the frequency of the conduct, the severity of the conduct, whether the conduct is physically threatening or humiliating or a mere offensive utterance, and whether it interferes with work performance. *Faragher*, 524 U.S. at 787-88; *Harris*, 510 U.S. at 23; *Mendoza*, 195 F.3d at 1246. Thus, even if an employee believed that her work environment was hostile or abusive, such belief is insufficient in itself to constitute a hostile work environment. An environment that merely engenders subjectively offensive feelings in an employee does not sufficiently affect the conditions of her employment. *Harris* , 510 U.S. at 20 (mere utterances of comments which the employee deems offensive are not, alone, so severe or pervasive as to create an objectively hostile or abusive work environment from the perspective of a reasonable person); *Fleming v. Boeing Co.*, 120 F.3d 242 (11th Cir. 1997) (affirming grant of summary judgment for employer where plaintiff had not shown that the alleged incidents were severe or pervasive enough to create an objectively hostile work environment, and a reasonable person would not find the alleged acts offensive).

In assessing whether the harassment is sufficiently severe and pervasive, courts have been careful to delineate between actionable harassment and harassment

134496                                                            5

unconnected to a protected category. In the present case, Smart attempts to bootstrap her meager evidence of arguably sexual conduct, consisting only of a couple of comments, an ambiguous episode where an unknown person placed her misplaced bra on a chair, and incident where an unknown person supposedly put semen on her bathing suit bottoms, with allegations of non-sexual and non-gender harassment. While such behavior may be boorish, it cannot properly be relied upon to establish actionable sexual harassment.

The Eleventh Circuit has held that Title VII "is not a shield against harsh treatment in the workplace." *Succar v. Dade County School Bd.*, 229 F.3d 1343, 1345 (11th Cir. 2000) (quoting *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 883, 93 L.Ed.2d 836 (1987)). "Personal animosity is not the equivalent of sex discrimination." *Succar*, 229 F.3d at 1345 (quoting *McCollum*, 794 F.2d at 610).

The Court in *Oncale* noted that non-sexual conduct may constitute sexual harassment where the plaintiff proves that she "is harassed in such sex-specific and derogatory terms . . . as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace" or by proving that women are subjected to harassing conduct while men are not. *Oncale*, 523 U.S. at 80-81. However, "[w]hatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimination . . . because of . . . sex.'" *Oncale*, 523 U.S. at 81. In this case, no interpretation of the evidence regarding Smart's transfer or the requirement that she complete her training can establish that such conduct properly constitutes evidence of sexual harassment. None of the evidence falls within the ambit of "sex-specific and derogatory terms as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace."

The Eleventh Circuit reiterated the principle that non-sexual harassment not taken against a plaintiff because of his or her gender cannot be considered when assessing whether the harassment is actionable. *Menefee v. Montgomery County Bd. of Educ.*, 137 Fed. Appx. 232, 233, 2005 WL 1444211 (11th Cir. 2005). In *Menefee*, the plaintiff alleged that a female co-worker sexually harassed him by hiding in his

134496                                    6

classroom and "throwing her forearm" into him as he passed, by standing in the doorway of his classroom to prevent him from leaving, and by stopping him, laughing and telling him that "the school was hers." Rejecting this evidence, the Court held:

> [H]e failed to show that the acts that occurred in April 2002 could be considered to have a sexual or gender-related nature. On their face, they do not appear to be sexual in nature, and he provided no evidence, other than conclusory allegations, to support the proposition that the April 2002 conduct was based on his gender. *Menefee*, 137 Fed. Appx. at 233-34.

Similarly, the decision in *Brill v. Lante Corp.*, 119 F.3d 1266, 1274 (7th Cir. 1997), cited approvingly by *Mendoza*, is instructive. In that case, the plaintiff sought to buttress her sexual harassment claim by relying upon evidence that a supervisor shared his religious view opposing premarital sex (the plaintiff was pregnant and unmarried) and evidence that another manager "towered" over her. Rejecting this evidence as being indicative of sexual harassment, the Court held that "Brill's attempts to buttress her claim with additional incidents—one manager telling her he disapproved of premarital sex and another yelling at her while 'towering' over her—do not appear to have anything to do with her sex, and for that matter are not particularly sexual in nature, either." *Brill*, 119 F.3d at 1274; *see also Mendoza*, 195 F.3d at 1247-48 (expressing doubt that conduct such as innocuous comments and following or staring could properly be considered sexual harassment); *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 976 (7th Cir. 2004) (rejecting as evidence of sexual harassment vulgar and crude conduct where offenders treated both genders poorly and other evidence of workplace difficulties were not based upon sex); *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 676-77 (7th Cir. 2005) (rejecting sexual harassment claim based upon conduct such as plaintiff being called a "son of a bitch," being subjected to profanity in her presence, interference with her work performance); *Dunlap v. Kansas Dept. of Health and Environment*, 127 Fed. Appx. 433, 436, 2005 WL 737585, **4 (10th Cir. 2005) (disregarding harassment not based upon protected category in deciding severity or pervasiveness element); *Nievaard v. City of Ann Arbor*, 124 Fed. Appx. 948, 954, 2005 WL 517294, **5-**6 (6th Cir. 2005) (harassment not based upon a protected category "cannot be figured 'into the hostile working environment equation,' because such incidents are not alleged to have occurred 'because of sex.' Therefore they cannot be

134496                                    7

considered[.]"); *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000) ("[W]hile Bowman recites a litany of perceived slights and abuses, many of the alleged harassing acts cannot be considered in the hostile environment analysis because Bowman has not shown that the alleged harassment was based upon his status as a male").

In this case, when viewed under the standards articulated above, Smart's allegations concerning her co-workers conduct do not rise to the level of severe and pervasive harassment. Indeed, it is clear that Smart herself did not consider any of the complained of behavior to be severe or pervasive as she never complained until after she received notice of the City's intent to discipline her for changing her PCR report. The conduct complained of was merely occasional comments she now alleges were harassing, and two incidents involving her clothing in which she admits she does not even know who was responsible. These actions certainly do not rise to the level necessary to support a claim under Title VII or the FCRA as they were neither frequent nor severe and did not involve threatening conduct.

The Eleventh Circuit's *en banc* decision in *Mendoza* is perhaps most instructive. In that case, the full Eleventh Circuit rejected a claim of sexual harassment with more egregious facts than those presented here. In particular, in *Mendoza*, the plaintiff introduced evidence that her supervisor constantly watched her and followed her around, constantly looked her up and down in a "very obvious fashion," on two occasions looked her up and down and stopped in her groin area and made a "sniffing" motion, commented that he was "getting fired up," made a sniffing motion on an additional occasion while not looking at her groin and, on one occasion, rubbed his hip against her while touching her shoulder and smiling. *Mendoza*, 195 F.3d at 1242-43. After a thorough discussion of precedent from around the country, the Court found that these facts were not sufficiently severe or pervasive so as to alter the terms or conditions of the plaintiff's employment and, as such, the Court affirmed the trial court's grant of judgment as a matter of law to the employer. *Id.*[1]

---

[1]Indeed, Judge Edmondson, in his concurring opinion, further stressed that Mendoza never presented any evidence of other employees at the workplace who were treated considerably different or better than she was. *Mendoza*, 195 F.3d at 1253. In his

As in *Mendoza*, Smart attempts to establish a claim of harassment based upon isolated incidents of a couple of arguably sexual comments. Unlike in *Mendoza*, here Smart does not even allege any physical touching whatsoever, instead, she claims that two items of her clothing, which she was not wearing at the time, were touched. Even if true, Smart's co-workers' conduct in this regard is insufficient to establish liability for harassment on the City's part.

Furthermore, even if the incidents of non-sexual, non-gender based conduct are considered in assessing severity or pervasiveness, it is nonetheless clear that the evidence introduced at trial falls far short of actionable conduct to support a jury verdict. If true, the Plaintiff's sexual harassment claim boils down to several insulting comments and gestures, discipline and "harassment" which she believes was unfair and unwarranted, and adverse assignments. These allegations simply do not establish the existence of an environment that was so intolerable that a reasonable person would find "severe and pervasive." *Freese v. Wuesthoff Health System, Inc.*, 2006 WL 1382111, *6 (M.D. Fla. 2006); *Harris v. Equifax, Inc.,* 2006 WL 819757, *8 (N. D. Ga. Mar. 23, 2006) (allegations that supervisor screamed at plaintiff, called plaintiff "old," and told plaintiff that he was unable to adopt to job changes did not constitute severe or pervasive conduct); *Mitchell v. Pope*, 189 Fed.Appx. 911, 913-14, (11th Cir. 2006) (sixteen incidents over four years which included "offensive" utterances and three instances of inappropriate touching failed to establish severe harassment where much of the conduct was not sex-based); *Agee v. Potter*, 2007 WL 332220, *3 (11th Cir. 2007) (shouting at plaintiff in a dehumanizing manner; speaking to plaintiff in an elevated voice; failing to intervene when plaintiff was assaulted by a coworker; and threatening plaintiff by telling her "I know what I am gonna do for you.  I'm gonna take care of you" was not sufficiently severe or pervasive to alter the terms and conditions of plaintiff's employment).

As in *Mendoza*, the decision in *Miller v. Lectra USA, Inc.*, 145 Fed. Appx. 315, 317, 2005 WL 1901821, **2 (11th Cir. 2005), likewise reveals that the conduct described by Smart fails to rise to an actionable level. In that case, the plaintiff's

---

opinion, such evidence is "the heart of the case" and courts should not allow "fudging on the proof." *Mendoza*, 195 F.3d at 1254.

134496                                                            9

allegations of harassment included incidents where the supervisor "(1) at a hotel bar and in front of Miller and other co-workers, loosened the tie of a married, male co-worker and rubbed her hands all over his chest and head, (2) took Miller with her to purchase condoms and told Miller that the condoms were for her "love-fest weekend with [her] new boyfriend," and (3) talked about her sex life with male and female co-workers[;] . . . [4] made comments to her about her being a good-looking female and her marriage not being that serious as she had been only recently married, [5] told her that she looked good in short skirts, and [6] asked her out for drinks and dinner on a number of occasions." *Miller*, 145 Fed. Appx. at 317. The Court held that this conduct could not establish the severe or pervasiveness element.

Evaluated under the settled legal standards set forth above, the facts of this case, taken in the light most favorable to Smart, nonetheless demonstrate that the complained of conduct falls beneath the level of actionable harassment.

> B. <u>Following the Plaintiff's Complaint, the City Promptly Investigated and Took Reasonable Steps to Prevent Any Future Inappropriate Conduct</u>

Assuming *arguendo* that Smart could establish that the harassment was sufficiently severe or pervasive, the City should nonetheless be awarded summary judgment as to the Plaintiff's summary judgment claims because it took prompt remedial action after Smart brought her co-workers' conduct to its attention.

As mentioned above, in the context of co-worker harassment, an employer may only be held liable when it knew or should have known of the harassment and failed to take prompt remedial action. *Castleberry,* 810 So.2d at 1029-30. Employer knowledge of the harassment can be established by proving that the employee complained to "higher management." *Kilgore v. Thompson & Brock Management, Inc.*, 93 F.3d 752, 753-54 (11th Cir. 1996), *reh'g and suggestion for reh'g en banc denied*, 105 F.3d 673 (1997).

The proper standard to measure the employer's response to a complaint of harassment is whether the remedial action is "reasonably likely to prevent the misconduct from recurring." *Kilgore*, 93 F.3d at 754; *Jackson v. Hennessy Auto*, 2006 WL 1882690, *2 (11th Cir. July 10, 2006) (*per curiam*) (slip opinion) (employers response to harassment "was appropriate and reasonable despite having failed to

prevent future harassment"); *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 811 (7th Cir. 2001) ("We are not to focus solely upon whether the remedial activity ultimately succeeded, but instead should determine whether the employer's total response was reasonable under the circumstances as then existed"); *Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 615 (7th Cir. 1999); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 676 (10th Cir. 1998). An employer need not take all possible actions or the most extreme actions in response to a complaint. *Kilgore*, 93 F.3d at 754. Rather, courts should consider "whether the response was proportional to the seriousness and frequency of the harassment." *Adler*, *supra*.

Additionally, the facts of the present case clearly established that the City's response to Smart's complaint was reasonable and effective. Notably, there were incidents when Smart complained of conduct, but had no idea who committed the conduct. For example, Smart had no idea who laid a bra she misplaced on a piece of furniture. The City investigated, but was unable to determine who placed her bra there. Similarly, when Smart complained about an harassing flyer being placed in her bunker gear, the City launched an investigation which included having the police department attempt to determine who placed the flyer there by checking for fingerprints. While the City was unable to determine who engaged in some of these incidents and therefore could not discipline any employee for these specific incidents, the City's through and prompt investigation was nonetheless reasonable under the circumstances. The fact that Smart may not agree with the results of the City's investigations or the remedial measures taken does not establish that those measures were not reasonable under the circumstances.

The undisputed facts establish that the City maintains a comprehensive anti-harassment policy and that it trains all of its employees regarding the policy. Upon receiving complaints from the City, it attempted to resolve them by immediately and thoroughly investigating the allegations and taking reasonable actions designed to prevent any such conduct from recurring. Accordingly, the City is entitled to summary judgment on these claims.

II. **The Plaintiff's Gender Discrimination Claims Are Due to Be Dismissed**

    A. <u>Several of the Complained-of Decisions Are Time-Barred</u>

To bring suit under Title VII, an individual must first file a charge of discrimination with the EEOC within 300 days. *Myers v. Central Florida Investments, Inc.*, 592 F.3d 1201, 1210, n.2 (11th Cir. 2010). Likewise, under the FCRA, a charge must be filed within 365 days. *Id.*; § 760.11(1), Fla. Stat. (2010). Claims not filed within these time periods are barred. *Myers*, 592 F.3d at n.2. Similarly, with respect to Section 1983, the applicable statute of limitations is four years. *Chappell v. Rich,* 340 F.3d 1279, 1283 (11th Cir. 2003).

The Plaintiff filed her charge of discrimination on March 21, 2008. As a consequence, any discrete actions occurring prior to March 21, 2007 are untimely under the FCRA and Title VII. Similarly, since the Plaintiff filed her complaint in this matter on May 21, 2010, any adverse actions occurring prior to May 21, 2006 fall outside the applicable statute of limitations for purposes of the Plaintiff's Section 1983 claim. As such, to the extent that the Plaintiff takes issue with any employment actions taken prior to these dates, the claims would be barred.

Plaintiff was hired January 2005 and completed probation on April 6, 2006. Thus allegations pertaining to her first day of training, or occurring during her probationary period or the extension of her probationary period are untimely. Her allegations referring to alleged comments by Lt. Todd which occurred while she was on probation and assigned to light duty due to a wrist injury are also untimely. She alleges she found what appeared to be semen on her bathing suit within nine (9) months of April 2005 (Second Amended Complaint ¶ 25) and the "bra" was taken/dropped in March 2006. Thus, none of the above are timely under §1983.

    B. <u>All of the City's Actions Were Based on Legitimate, Non-Discriminatory Reasons</u>

Under the *McDonnell Douglas* framework, a plaintiff must first establish, by a preponderance of the evidence, a *prima facie* case of discrimination. *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997). If a *prima facie* showing is made, the employer is obligated to offer a "legitimate, non-discriminatory reason" for the adverse employment action. If the employer articulates a legitimate reason, the plaintiff must then prove that

the employer's reasons were pretextual.[2] *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Morris v. Emory Clinic, Inc.,* 402 F.3d 1076, 1081 (11th Cir.2005). The ultimate burden of proving discrimination rests at all times with the plaintiff. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

In this case, Smart claims that she was suspended for 240 hours and reported to the Department of Health because of her gender. Smart was suspended because she deleted the Patient Care Report (PCR) that reflected the poor quality of care she provided on the scene and substituted a PCR that reflected the medical care she should have but did not provide. The deletion and substitution were made approximately seven (7) hours later because in the interim she learned that the patient she treated had been paralyzed from the waist down when he arrived at the emergency room. In other words, she learned that her actions at the scene may have caused the paralysis, she changed the PCR. That is why she was suspended and that is why she was reported to the Department of Health. She also claims in May 2008 she was denied an assignment to ¾. The assignments are based on seniority and Smart admitted she was less senior than Aurelio Mederos who also bid for the Assignment. In fact, she affirmatively wanted to float between stations and even requested it. Ultimately, however, all assignments, including floating from station to station are based on seniority. Clearly all the above are based upon legitimate reasons and not her gender.

For these reasons, the City is entitled to summary judgment as to the Plaintiff's discrimination claims.

**III.    The Plaintiff's Retaliation Claims Are Due to Be Dismissed**

A. <u>Several of the Complained-of Decisions Are Time-Barred</u>

As noted above, any challenges to employment actions which occurred prior to March 21, 2007 would be untimely under both the FCRA and Title VII, and any challenges to employment actions occurring prior to May 21, 2006 are untimely under

---

[2] As noted above, as with harassment claims, the courts employ the same standard to Title VII, FCRA and Section 1983 Equal Protection claims alleging unlawful discrimination.

Section 1983. To the extent that the Plaintiff takes issue with any employment actions taken prior to these dates, the claims would be barred.

Clearly any alleged retaliation that occurred during her probationary period and or the extension are not timely even under §1983.

  B. <u>All of the City's Actions Were Based on Legitimate, Non-Retaliatory Reasons</u>

Claims of retaliation are analyzed using the same *McDonnell Douglas* burden-shifting framework set forth above. Accordingly, even assuming *arguendo* that the Plaintiff can establish a *prima facie* case,[3] her claims of retaliation are due to be dismissed as the City has established that it had legitimate, non-retaliatory reasons for each of its decisions pertaining to the Plaintiff's employment. *Sullivan v. Nat'l R.R. Passenger Corp.,* 170 F.3d 1056, 1059 (11th Cir.1999); *Brown v. Sybase, Inc.*, 287 F.Supp.2d 1330, 1348 (11th Cir. 2005) (upholding summary judgment for employer on employee's claim of retaliation where employee had insufficient evidence of pretext in light of employer' proffered reasons).

For reasons discussed above, the suspension, report to the Department of Health, transfer from station to station (i.e. floating) and denial of a position/probation were all based upon legitimate non retaliatory reasons.

Moreover, where, as here, it is apparent that an employer has made a tentative disciplinary decision or otherwise contemplated the adverse action prior to the Plaintiff's complaint, the employer's decision to carry through with its decision is not evidence of retaliation. *Saffold v. Special Counsel Inc.*, 147 Fed.Appx. 949, 951 (11th Cir. 2006) (plaintiff failed to establish causal connection when evidence showed that employer had contemplated terminating her prior to receiving her EEOC charge); *Clark County School District v. Breeden*, 532 U.S. 268 (2001) (holding that where an employer contemplated transferring an employee before the employer learned that the employee filed a Title VII suit, the employer's decision to proceed along the lines of previously contemplated, though not yet definitively determined actions, did not establish evidence of causality).

---

[3] To establish a *prima facie* case of retaliation, the Plaintiff must prove that (1) she participated in a protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision. *Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 587 (11th Cir.2000).

For these reasons, the City is entitled to summary judgment as to the Plaintiff's retaliation claims.

### C. The Plaintiff Cannot Maintain a Section 1983 Retaliation Claim Arising Under the Equal Protection Clause as No Such Cause of Action has Been Recognized

The Plaintiff's Section 1983 retaliation claim allegedly arising under the Equal Protection clause also fails since no such cause of action has been recognized. *Jolivette*, 180 Fed. Appx. at 887; *Ratliff*, 62 F.3d at 340; *Russell v. Public Health Trust of Miami-Dade County*, 2009 WL 936662, *10. The Eleventh Circuit has held that "an allegation of a Title VII violation cannot provide the sole basis for a § 1983 claim." *See Arrington v. Cobb County,* 139 F.3d 865, 872 (11th Cir. 1998). A plaintiff cannot bootstrap an untimely Title VII claim by brining a § 1983 action based only on a statutory violation of Title VII. *Id.* Plaintiff does not show a violation of her constitutional equal protection rights, instead she simply reiterates the alleged actions by Defendant that would constitute statutory violations of Title VII and attempts to mask them as violations of § 1983. Accordingly, even assuming *arguendo* that the Plaintiff's Title VII and FCRA retaliation claims could somehow survive summary judgment, her Section 1983 retaliation claim should nonetheless be dismissed.

### IV. The Plaintiff's Section 1983 Claims Are Due to Be Dismissed as the Plaintiff Cannot Establish Municipal Liability Since the City did not have a Custom or Policy of Engaging in Unlawful Harassment, Discrimination or Retaliation

In addition to the reasons set forth above, the Plaintiff's Section 1983 Equal Protection claims are also due to be dismissed due to the fact that she cannot establish municipal liability on the City's part in accordance with *Monell* and its progeny. In this respect, the Plaintiff cannot establish either a custom or policy of unlawful conduct by the City or that the actions complained of were taken by a final policymaker.

Although it is possible for Section 1983 liability to attach to a local government for violations of the Equal Protection clause, a local government cannot be held liable on a *respondeat superior* theory based exclusively on "the existence of an employer-employee relationship with a tortfeasor." *Samedi v. Miami-Dade County*, 134 F.Supp.2d 1320, 1348 (S.D. Fla 2001). Instead, "section 1983 liability is limited to certain situations

in which plaintiff complains of acts that are, properly speaking, acts of the municipality -- that is, acts which the municipality has officially sanctioned or ordered." *Id.*

"It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dept. of Soc. Serv.,* 436 U.S. 658 at 694 (1978); *see also Young v. City of Augusta*, 59 F.3d 1160, 1171 (11th Cir.1995) (Ultimately, a plaintiff must "demonstrate a direct causal link between a [City] policy or custom and the alleged constitutional deprivations" and the asserted constitutional violation).

"Thus, to satisfy the under-color-of-state law standard, a plaintiff in a [Section] 1983 suit against a municipality must establish that the acts giving rise the injury arose from one of three sources: (1) 'an official government policy'; (2) 'the actions of an official fairly deemed to represent government policy'; or (3) 'a custom or practice so pervasive and well-settled that it assumes the force of law.'" *Summers*, *supra* at *9.

Where a § 1983 claim against a governmental entity is premised upon an official policy, a plaintiff must show that "the entity's final decisionmakers" participated in establishing the policy which "directly or indirectly resulted in the constitutional violation." *Buzzi v. Gomez*, 62 F.Supp.2d 1344, 1358 (S.D. Fla. 1999). With regard to the second theory of imputing Section 1983 liability to public entity, "[f]or an official to be fairly deemed to represent government policy, 'the acting official must be imbued with final policymaking authority" in that his "decisions in the area are [not] subject to meaningful administrative review.'" *Denno*, 218 F.3d at 1276. "Determining whether an official possesses final policymaking authority is a question of law for the judge to decide." *Buzzi*, 62 F.Supp.2d at 1359 (citing *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989)).

If proceeding under the third basis for Section 1983 liability, i.e. a custom or practice, a plaintiff must show that the alleged offending custom or practice is "so pervasive and well-settled that it assumes the force of law." *Denno*, 218 F.3d at 1276. An actionable custom or practice must be a "persistent and widespread practice" of the alleged discrimination "about which the [City] knew or of which practice it had constructive knowledge, because 'normally random acts or isolated incidents are

insufficient to establish a custom.' " *Id.* at 1277 (quoting *Church v. City of Huntsville,* 30 F.3d 1332, 1345 (11th Cir.1994)).

The official policy of the City is and at all times relevant has been that sexual harassment and discrimination are prohibited. In fact, the Plaintiff acknowledges in her Second Amended Complaint that "the City maintained a sexual harassment policy" prohibiting sexual harassment as well as rules proscribing discrimination in personnel decisions. (Second Amended Complaint, p. 4). She further admits that per the City's sexual harassment policy that "an employee who has been subjected to sexual harassment may complain to his or her supervisor, department head or Affirmative Action Officer.." (Id., p. 4). There is simply no record evidence of the promulgation of an official policy made by those with final policymaking authority, inconsistent with the City's well-established proscriptions against discrimination and harassment.

Moreover, any assertion by Plaintiff that the alleged discrimination and/or harassment was directly attributed to a "custom or practice" which contravenes the City's official written policies is without merit. It is undisputed, as stated above, that the official written policies of the City prohibited unlawful discrimination and harassment as well as provided a complaint procedure. The Plaintiff cannot demonstrate "a persistent and widespread practice," of which the City had knowledge, inconsistent with its official policy of equal employment opportunity. The Plaintiff does not contend that other City employees have been subjected to sex discrimination and/or harassment, and, the Plaintiff's asserted trials and tribulations, even if proven true, would not in and of themselves establish a sufficient custom. *Buzzi*, 62 F.Supp.2d at 1361 (five incidents involving plaintiff which occurred over three-year period did not give rise to an offending custom); *Prieto v. Metropolitan Dade County*, 718 F.Supp. 934, 938-39 (S.D. Fla. 1989) (four isolated incidents over two years involving only the plaintiff did not establish a custom under Section 1983).

To the extent the Plaintiff contends that her suspension in June 2008 was attributed to the decision of a final policy maker(s), her claim must fail. Pursuant to the City's Collective Bargaining Agreement with the IAFF, the Plaintiff was able to grieve her suspension and in fact did so with legal representation. Though the Plaintiff received an adverse result at Step III of the procedure, she was entitled to arbitrate of the matter,

an option she chose not to pursue. Plaintiff also chose not to grieve the alleged denial of overtime or the failure to assign/promote her. For the same reason, these alleged actions are also not a decision made by a final policy maker of the City. Her suspension was therefore subject to a "meaningful administrative review" such that the suspension decision was not made by a final policymaker of the City. *Maschmeier v. Scott*, 269 Fed.Appx. 941, 2008 WL 698932 (11th Cir. 2008) (Sheriff deemed not to be a final policymaker with regard to plaintiff's termination where termination was subject to review by civil service board); *Summers*, 2010 WL 4386518 at 9 (Section 1983 claim by city police officer failed as termination decision by police chief was subject to grievance and appeal procedure); and *Buzzi*, 62 F.Supp.2d at 1359 (police officer's claim that he was subjected to a discriminatory investigation of an abuse claim against him did not support Section 1983 entity liability as the findings of the investigation could be appealed to a hearing examiner appointed by the American Arbitration Association).

Since the Plaintiff cannot establish that the City had a custom or policy of unlawful harassment, discrimination or retaliation, nor can she establish that any unlawful actions were taken by a final policymaker, the Plaintiff's Section 1983 claims fail and summary judgment in the City's favor is proper.

WHEREFORE, the City of Miami Beach respectfully requests that the Court grant the foregoing motion and enter an order granting summary judgment in its favor as to all of the Plaintiff's claims.

Respectfully submitted,

s/ Susan Potter Norton
Susan Potter Norton, Esquire
snorton@anblaw.com
Florida Bar No. 0201847
Brigid A. Patrick, Esquire
bpatrick@anblaw.com
Florida Bar No. 79048

ALLEN, NORTON & BLUE, P.A.
121 Majorca Avenue
Coral Gables, Florida 33134
Tel:   (305) 445-7801
Fax:   (305) 442-1578
Counsel for Defendant

## CERTIFICATE OF SERVICE

  I hereby certify that on May 6, 2011, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF System, which will automatically send notification of such on all counsel or parties of record on the Service List below.

s/ Susan Potter Norton ___

## SERVICE LIST

Stanley Kiszkiel, Esq.
sklaw@kiszkiellaw.com
STANLEY KISZKIEL, P.A.
9000 Sheridan Street
Suite 94
Pembroke Pines, FL 33024
Tel: (954) 862-2288
Fax: (954) 862-2287
Attorneys for Plaintiff Marlenis Smart

Susan Potter Norton, Esquire
snorton@anblaw.com
Brigid A. Patrick, Esquire
bpatrick@anblaw.com
ALLEN, NORTON & BLUE, P.A.
121 Majorca Avenue
Coral Gables, Florida 33134
Tel:   (305) 445-7801
Fax:  (305) 442-1578
Counsel for Defendant

Dion J. Cassata
dion@cassatahanson.com
DION J. CASSATA, P.A.
320 S.E. 10TH Court
Fort Lauderdale, Florida 33316
Tel: (954) 364-7803
Fax: (954) 251-4787
Attorneys for Plaintiff Marlenis Smart

Rob Rosenwald
robrosenwald@miamibeachfl.gov
Senior Assistant City Attorney
OFFICE OF THE CITY ATTORNEY
1700 Convention Center Drive
Miami Beach, FL 33139
Tel: 305-673-7000
Fax: 305-673-7002
Counsel for Defendant