UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.: 10-21667-COOKE/TURNOFF

MARLENIS SMART,

    Plaintiff,

vs.

CITY OF MIAMI BEACH, FLORIDA,
a political subdivision,

    Defendant.
_____/

## JOINT PRETRIAL STIPULATION

The parties, by and through their undersigned counsel, and in accordance with this Court's Pretrial Order and Local Rule for the Southern District 16.1 (E), hereby file their Joint Pretrial Stipulation as follows:

**I.**    **Summary of the Claims and Defenses in the Case to be Read as Introduction for Voir Dire Examination**

Plaintiff is a firefighter/Paramedic with the Defendant, City of Miami Beach Fire Department. Plaintiff is suing the Defendant because she says that during her employment she was (1) sexually harassed, (2) discriminated against based on her sex and retaliated against for complaining of discrimination. The City suspended her for 240 hours and reported her to the Department of Health. The City denies that it participated in any unlawful discriminatory or retaliatory conduct and says that it suspended Plaintiff and submitted a report to the Department of Health because Plaintiff changed a Patient Care Report that reflected the poor quality of care she provided to a patient on the scene and then submitted a final report that reflected the medical care she allegedly

135883-1

should have, but did not, provide. The City states this was in violation of the City's policies. The City also states that it took prompt corrective action when it subsequently learned of Plaintiff's complaints.

II.     **Short Concise Statement of the Case by Each Party**

**Plaintiff's Statement**

Plaintiff has filed claims of sexual harassment, gender discrimination, and retaliation against her employer, The City of Miami Beach. The Plaintiff claims that she has been subjected to repeated acts of multiple incidents of harassment based on her gender and then retaliated against for coming forward with those complaints. Each incident isolated is not significant or severe or pervasive enough to be constituted as actionable by the confines of the law, however, collectively these incidents have created a hostile work environment which far exceed the levels of severity and pervasiveness. The employer has been made aware of these incidents individually and collectively and has done nothing to change the behavior of the offenders. She has been sexually harassed, singled out, discriminated against, and even had her life and safety threatened, all while attempting to continue her employment as a civil servant. .

**Defendant's Statement**

Defendant denies of all Plaintiffs claims. Defendant further submits that the conduct that Plaintiff alleges in support of her charge of sexual harassment is not sufficiently severe or pervasive to be actionable and that Defendant took prompt and reasonable remedial action upon learning of Plaintiff's allegations. Defendant further submits that, as to Plaintiff's claims of gender discrimination and retaliation, Defendant's employment decisions were all based on legitimate, non-discriminatory and non-

135883-1

retaliatory reasons. Finally, Plaintiff's Section 1983 claims are not actionable because Plaintiff cannot establish the requisite municipal liability; the Equal Protection clause does not provide a cause of action for retaliation; and Plaintiff cannot establish that Defendant maintained a custom or policy of unlawful harassment, discrimination or retaliation, nor can the Plaintiff establish that a final policymaker is responsible for any alleged unlawful actions.

## II. The Basis of Federal Jurisdiction

Jurisdiction in this case is proper pursuant to the Court's jurisdiction over claims arising under federal law. 28 U.S.C. § 1331. Likewise, the Court is empowered to exercise supplemental jurisdiction over the Plaintiff's state law claims. 29 U.S.C. § 1367.

## III. Pleadings Raising the Issues

1. Plaintiff's Second Amended Complaint
2. Defendant's Answer and Affirmative Defenses to Plaintiff's Amended Complaint
3. Defendant's Motion for Summary Judgment, Memorandum of Law, and Statement of Undisputed Material Facts

## IV. Undisposed Motions Which Require Action by the Court

1. Defendant's Motion for Summary Judgment

## V. Concise Statement of Uncontested Facts Which Will Require No Proof at Trial

1. Plaintiff is a firefighter/paramedic employed by Defendant of Miami Beach Fire Department.

2. Defendant instituted an investigation into the substitution of the narrative on a Patient Care Report (PCR) for the care Plaintiff provided at the scene to an individual (Patient #1) on a rescue call on January 14, 2008.

3. The Chief of Emergency Medicine at Mount Sinai Medical Center ("Mount Sinai") questioned the standard of care provided by Plaintiff's rescue unit.

4. The PCR Plaintiff initially submitted to Mount Sinai was completed around 2:00 p.m. before she was called back at 5:00 p.m. and learned the patient was paralyzed from the waist down at the time of arrival at the emergency room. The initially filed PCR did not reflect the proper standard of care. The later filed "improved" PCR did.

5. With respect to the incident underlying the PCR in questions, on January 14, 2008, Plaintiff was the assigned team leader (Acting Firefighter 2, or "F-2") on Rescue Unit #3. When a F1 rides "above grade" as F2 they receive additional compensation.

6. Firefighter, Gary Johnson (male), and Firefighter I, Sam Spadone (male) accompanied Plaintiff to the call at 1:09 p.m. Three landscapers had been injured by a large palm tree that fell off of a crane during planting.

7. Plaintiff was the crew member most fluent in Spanish. Although Plaintiff observed the patient moving his arms, she admitted in a taped interview during the disciplinary investigation and at her deposition she did not assess the patient's legs.

8. As the F2, Plaintiff was responsible for preparing and completing the PCRs at the Mount Sinai. As required, she provided the PCRs to emergency room personnel before leaving the hospital.

9. Shortly before 5:00 p.m. that evening, Plaintiff's rescue unit was called back to the Mount Sinai Emergency Room for an inter-hospital transport of Patient #1 from Mount Sinai to the Trauma Center at Jackson Memorial Hospital. At that time, Mount Sinai Emergency Room personnel informed Plaintiff that Patient #1 had a severed spinal cord (complete cord and spine transection at T8-T9) and a "pneumo hemo" (blood in the lung cavity). Plaintiff was shown an MRI depicting a complete transection of the spine. According to Mount Sinai Emergency Room personnel, Patient #1 was paralyzed from the waist down at the time of the initial examination in the emergency room. Plaintiff and her crew transported Patient #1 to the Trauma Center at Jackson.

10. At 6:00 p.m., after the unit returned to the Station, the Rescue Lieutenant, Lieutenant Dowling met with Plaintiff, Johnson and Spadone and reviewed the PCR. During this review, and after hearing their account of what each did at the scene, Lieutenant Dowling noted that Plaintiff's narrative in the PCR for Patient #1 did not reflect the three failed attempts to insert a IV which should have been included. Dowling also noted that the narrative consisted of a long run-on sentence and recommended that she add punctuation.

11. Plaintiff substituted the entire narrative of the PCR for Patient #1 and submitted a different version on the fire department's server.

12. The PCR Plaintiff prepared before she learned that Patient #1 was paralyzed from the waist down on arrival at Mt Sinai was as follows:

> "UPON ARRIVAL PT FOUND ON FLOOR C/O ARM AND LEG PAIN PT STATES THAT HE WAS WORKING WHEN A PALM TREE FELL ON HIM PT DENIES LOC SOB NO TRAUMA SUSPECTED PT DENIES NECK OR BACK PAIN PT HAS

135883-1

> BRUSHING ON LEFT SHOULDER AND LEFT LEG PT MAEX4 LUNGS CLEARX4 PT AT THIS TIME STATES THAT PAIN IS A 4 ON SCALE SHOULDER PAIN IS GETTING WORSE PT STATES THAT TREE HIT GROUND AND PT WAS FOUND ON HOLE UNDER TREE PT'S SUPERVISOR STATE THAT WORKERS MOVED PT TO GET HIM OUT OF THE HEAT, PO ON SCENE"

13. The version Plaintiff substituted after she was told by the Mt. Sinai medical staff that the patient was paralyzed on arrival, was as follows:

> "PT FOUND AT CONSTRUCTION SITE UPON RESCUE ARRIVAL. PTS CAOX3 AND MAEX4, PT DENIES ANY NUMBNESS OR TINGLING SENSATION IN EXTREMITIES. Head TO TOE SURVEY REVEALED NO OBVIOUS DEFORMITIES. CO WORKERS STATED THAT PT WAS IN FRONT OF TREE AND THE SAFETY WAS NOT ON THE MACHINE BEING USED THAT'S WHEN THE TREE FELL AND HIT PT ON SHOULDER. WORKERS ON SCENE STATE THAT THE PT WAS C/O BEING HOT AND HIS CO WORKERS MOVED PT OVER TO GET HIM OUT OF THE SUN. PT DENIES ANY NECK OR BACK PAIN AT THIS TIME BUT C/O LEFT SHOULDER PAIN. PT WAS STRONGLY ADVISED OF THE NECESSITY OF WEARING THE NECK COLLAR AND BACKBOARD, AFTER SEVERAL ATIEMPTS PT STILL REFUSED. DURING THE SECONDARY SURVEY PAIN TO LEFT ARM WAS NOTED AND AT THAT TIME CREW SPLINTED THE LEFT ARM WITH NO OBVIOUS DEFORMITIES TO LEFT ARM. UPON EXAM OF CHEST PT HAD REDNESS NEG SWELLING OR BRUISING, NO OBVIOUS DEFORMITY. PT STATES THAT THE REDNESS WAS FROM A COUPLE DAYS AGO FROM HIS JOB. PT DENIES NO PAIN ON INSPIRATION OR EXPIRATION. PT AT THIS TIME STATES THAT HE JUST WANTS TO GO TO THE HOSPITAL FOR A X-RAY. PT DENIES ANY HX NO ALLERGIES OR MEDICATION AT THIS TIME. PT MAEX4 LUNGS CLEARX4 02 99 UPON ARRIVAL AT HOSPITAL NO CHANGE IN PI'S CONDITION TRANSFERRED CARE TO ER."

14. City of Miami Beach Fire Department Medical Operations Manual, Procedure 29.9 (5, 9), provides that an original PCR may not be altered; rather, an addendum must be written.

135883-1

15. Plaintiff admitted during her disciplinary investigation that she did not ask how to do an addendum.

16. The next day on January 15, 2008, the Fire Department's Medical Director, Fred Keroff, and Division Chief, Christopher Parrino, received an email from Dr. David Lang, the Chief of Emergency Medicine at Mount Sinai Medical Center, asking for a review of Patient #1's case. Dr. Lang requested that Dr. Keroff meet with him the following week.

17. On February 6, 2008, Dr. Keroff advised the Fire Chief of his findings and recommendations regarding the quality of patient care each paramedic provided.

18. On February 7, 2008, Chief Del Favero gave Plaintiff, Spadone and Johnson a copy of Keoff's letter advising in writing that each was re-assigned to day shifts for remedial training.

19. On March 19, 2008, following a full investigation, including taped interviews of Plaintiff's co-workers and supervisors, Chief Otero provided his written findings with respect to each of her allegations.

20. On January 3rd, 2008, Plaintiff had spoken with her Station Officer, John Jarenko ("Jarenko"), regarding a personality conflict with FF Sid Reese. Jarenko attempted to resolve the matter and tried to get both parties to agree to confidential non-binding mediation.

21. On February 1, 2008, Chief Otero prepared and forwarded a summary of his understanding of Plaintiff's issues to her and explained:

> Since I have not received written documentation from you, I drafted the attached letter to document your verbal complaint as well as complaints forwarded to me from Chief Jarenko's understanding. Please review the list to insure it is [ac]curate

135883-1

and factual. If I have misunderstood or not documented something accurately, please reply to this email with your comments. I will complete a final draft to submit to the Fire Chief and will present the document to FF Russo to initiate the investigation.

22. Several hours later, Plaintiff confirmed it was factual and accurate and stated:

> Chief,
>
> Thank you for taking the initiative to document some of these issues. Just so you are aware, I have also documented these issues but have chosen not to release them. Once again, in good faith, I was hoping that mediation would have been a sufficient resolution and that I wouldn't have to release the documentation. In response to your initial inquiry, yes the list is factual and correct, however there are numerous additional items that are not included. I will be providing the updated list early next week...
> (Pl.'s Depo. p. 84).

23. The following were the issues listed by the Chief:

1. FF Reese spreads rumors about her both at work and home.
2. FF Reese holds a grudge over issues occurring during training.
3. FF Reese criticizes her need to be here as an employee and whether or not she met standards of performance to complete training.
4. Sometime during her probation, while assigned to a rescue unit, she overheard Lieutenant Todd who was assigned to Engine 4 instruct a member of his crew to avoid her she is trouble. FF Plaintiff stated Lieutenant Todd apologized for his behavior the following shift and that has been her only problem with him.
5. Enforcement of uniform standard is not equally applied. She is corrected for violations that others are not corrected for at station 4.
6. The crew of Engine 4 ignores her at the station and at times have ignored her radio transmission.

24. On February 2, 2008, The Assistant Chief replied: "Marlenis [Plaintiff] please provide me with the additional items for inclusion in my letter to the [Fire] Chief and other parties involved. I will send it back to you for review and will need your signature on the final draft to ensure I am not inaccurately or incompletely documenting

135883-1

your allegations. I want to proceed with an investigation as soon as possible so please respond as soon as possible."

25.  Plaintiff filed her EEOC/FCHR charge on March 21, 2008, and her Complaint in this lawsuit on May 21, 2010. Plaintiff attributed only one alleged incident to Lieutenant Todd. The incident occurred during her probationary period, which Plaintiff completed on April 6, 2006.

26.  In Plaintiff's February 8, 2008 email, submitting her eleven paragraph complaint, she stated that her "memo [was] to formally document the incidents and concerns that I have verbalized <u>over the past weeks.</u>"

27.  In Plaintiff's email of February 1, 2008, to Chief Otero, she stated: "I have also documented these issues, but have chosen not to release them."

28.  Defendant currently has, and has had, a policy prohibiting sexual harassment. As part of her training, during her probationary period, Plaintiff received four (4) hours of training on sexual harassment.

29.  The 2007 Administrative Policy of the Fire-Rescue Department specifically states: "Reports may circumvent the normal chain of command if the person initiating the report fears retribution or indifference at any level of command. This includes reporting directly to the Human Resources Affirmative Action Officer or Defendant Manager's Office."

30.  Plaintiff had communicated with Human Resources numerous times in 2006, when she was forced to extend her probationary period because of her health related issues. Plaintiff's probationary period was extended for ninety (90) days.

31. On her written evaluations, Sid Reese complimented her work, stating "she showed compassion and concern for her classmates and put them first above herself, this instructor notice and was impressed" and told her that "quitting was not an option."

32. Both the male and female bathrooms at Station 4 are designed for use by multiple people. At the time, the station was new and neither the men's nor the women's bathrooms had shower curtains. Plaintiff had been assigned to support services during her probationary period.

33. Walter Carroll filed a grievance in March 2009 when the City transferred him because it found his emails to Plaintiff to be improper, a misuse of City time and equipment and in disregard of City policies.

34. The first day of training Plaintiff's was January 31, 2005. It was not until March 10, 2008, that Plaintiff advised Chief Otero that Reese had allegedly commented on the first day of training [1/30/05] that "she didn't need to work and got this job as a hobby." There were a total of nine (9) trainees in Plaintiff's class, including another female.

35. Plaintiff's allegation of receipt of threatening calls was investigated and neither she, Defendant nor Defendant of Miami Shores was able to identify anyone.

36. Plaintiff switched shifts to Shift C in February 1, 2008, which was after January 14, 2008.

37. On February 2008, when told that two firefighters at Station 2 on the C Shift did not want Plaintiff assigned there, Chief Otero advised that assignments are

made on bids and failure to honor the assignment was in violation of the Collective Bargaining Agreement.

38. Plaintiff complained and noted other females had been assigned and accepted at Station 2. Plaintiff's complaint, that she "will never be given professional respect," arose after January 14, 2008.

39. The Pre-hospital Emergency Care states: ...Remember these two basic rules when filling out any PCR. "If it wasn't written down, it wasn't done" (no it was done and you won't be able to prove it was done, don't write it down" (which constitutes falsifying information)..."

40. Plaintiff spoke to Lieutenant Dowling after she submitted the PCR. Plaintiff did not advise either that she had made the change. Plaintiff did not ask how to do an addendum.

41. On Thursday, February 28, 2008, then Assistant Fire Chief Yuhr, submitted a report to Fire Chief Del Favero on the investigation into Plaintiff's PCR. In that Report, Captain Yuhr found as follows:

> ...The deletion of the initial narrative was an affirmative act. FF1 Plaintiff admitted to knowing that an addendum was not a substitution, it is an add-on. FF1 Plaintiff could have entered the second narrative after the first one, rather than deleting the first one and then entering the second. FF1 Plaintiff didn't ask anyone for assistance or more importantly tell anyone afterwards of her actions, when she was in fact directed on what to do and who to notify. How the Department can answer the two versions of the PCR after the fact, in a litigious setting, is uncertain at best...

42. On April 17, 2008, Plaintiff was served with a Notice to Discipline requesting termination. A pre-determination hearing was held on May 1, 2008. She was represented by both the Union and her Counsel, Robert Weisberg.

43. On May 15, 2008, Plaintiff was notified that instead of termination she would be suspended for ten (10) shifts, or 240 hours. The suspension was placed into effect for the month of June 2008.

44. Plaintiff grieved the suspension the grievance was denied as reflected on the Grievance Reply Form, in part found that: ...The grievant previously filed 42 separate PCR's in electronic format. These were all filed since September 2007 by the grievant while acting out-of-class ... As noted, there were serious patient care issues with this incident and the way the PCR was altered (had it not been discovered) left no way for Defendant to know that the original was changed.

45. Plaintiff had the right, under the Collective Bargaining Agreement between the IAFF and Defendant, to submit the grievance over her suspension to binding arbitration.

46. Overtime is only available to firefighters asked to ride on fire or rescue not during mandated remedial training.

47. Unfair allocation of overtime is grievable under the CBA. Plaintiff never filed a grievance for that issue.

48. In August 2008, at Station 4, Plaintiff found a flyer in her bunker gear with the words "Next Fire Last Fire X Liar" written in block letters with a black felt pen. The Miami Beach Police Department has thoroughly investigated and fingerprinted the flyer but has been unable to identify any suspect. Plaintiff admitted that she could not think of anything Defendant could have done in addition to what it did to investigate the incident regarding the flyer.

49. On December 16 or 17, 2010, Plaintiff started FMLA maternity leave for the birth of her fourth child. Plaintiff had also used FMLA leave the previous year for the birth of her third child. When Plaintiff's FMLA allotment expired, Defendant had the discretion to agree to provide additional leave and did so for Plaintiff.

## VI.   Issues of Fact Which Remain to Be Litigated

**Plaintiff**

1). Defendant's liability for sex and gender discrimination, harassment, and retaliation.

2). Plaintiff's Damages.

**Defendant**

Defendant contends there are no issues of material fact to be litigated at trial, as stated in its Motion for Summary Judgment. In the event Defendant's Motion is denied, however, Defendant contends the following issues of fact remain to be litigated:

1. As to Plaintiff's claims of sexual harassment, the material facts and circumstances relied upon;

2. As to Plaintiff's claims of discrimination, the material facts and circumstances relied upon; and

3. As to Plaintiff's claims of retaliation, the material facts and circumstances relied upon.

## VII.   Issues of Law on Which there is Agreement

1. The Court has jurisdiction over the parties and the action.

2. Personal jurisdiction exists over each of the parties.

3. Venue properly rests with this Court.

**VIII.** **Issues of Law Which Remain for Determination by this Court**

1. Whether Plaintiff was subjected to unlawful sexual harassment under Title VII and the FCRA.

2. Whether Plaintiff was subjected to unlawful discrimination, on the basis of her gender, under Title VII and the FCRA.

3. Whether Plaintiff was subjected to unlawful retaliation for complaining of unlawful employment practices under Title VII and the FCRA.

4. Whether Plaintiff was subjected to sex/gender harassment under Section 1983.

5. Whether Plaintiff was subjected to unlawful gender discrimination under Section 1983.

6. Whether Plaintiff was subjected to unlawful retaliation under Section 1983.

7. Whether Defendant is entitled to an award of attorneys' fees and costs incurred in this action.

8. Whether all employment actions taken by Defendant with regard to Plaintiff were taken for lawful and legitimate business reasons, unrelated to her gender.

9. Whether Defendant acted in good faith at all times toward Plaintiff and without any intent to deprive her of any rights.

10. Whether all actions taken by Defendant with respect to Plaintiff were taken in good faith compliance with all applicable laws, including 42 U.S.C. §1983.

11. Whether Defendant did not intentionally discriminate against Plaintiff or violate any of her rights.

135883-1

12. Whether there are no persons similarly situated to Plaintiff who were treated differently by Defendant.

13. Assuming, *arguendo*, that Plaintiff was treated differently than any similarly situated employee, whether she was treated differently for a non-discriminatory reason.

14. Whether Defendant can be held liable under 42 U.S.C. § 1983 as any unlawful actions taken against the Plaintiff were not taken in accordance with any custom, policy or practice and were not taken while any official or employee was acting as a final policymaker or under color of law.

15. Assuming, *arguendo*, the decision of Defendant to suspend Plaintiff's employment was motivated in part by any impermissible reason alleged, whether the same decision would have been made anyway and Plaintiff's employment would still have been suspended.

16. Assuming, *arguendo*, Plaintiff is awarded damages; whether Plaintiff's recovery must be reduced, diminished or defeated by such amounts that could have been mitigated.

17. Whether Plaintiff's claims for equitable relief are barred by the doctrine of unclean hands.

18. Whether Plaintiff's claims may, in whole or in part, be barred by the applicable statute of limitations.

19. Whether all conduct or action by Defendant towards Plaintiff was taken for legitimate, nondiscriminatory business reasons unrelated to the Plaintiff's gender.

20. Whether Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by Defendant.

21. Whether Defendant has implemented and published comprehensive written policies against employment discrimination and work place harassment that expressly prohibit any form of harassment based on disability or sex, among other things.

22. Assuming, *arguendo*, the occurrence of any conduct of sexual nature, whether such conduct was unwelcomed by Plaintiff.

23. Assuming, *arguendo*, the occurrence of any conduct of sexual nature, whether Plaintiff did not find the conduct offensive.

24. Assuming, *arguendo*, the occurrence of any conduct of sexual nature, whether such conduct was sufficiently severe or pervasive as to alter the terms and conditions of Plaintiff's employment.

25. Assuming, *arguendo*, Plaintiff was subjected to hostile threatening and offensive environment, whether such environment was based upon her gender.

26. Assuming *arguendo*, Plaintiff complained of any discrimination and/or harassment, whether such complaint was the motivating reason for any adverse employment action.

27. Assuming, *arguendo*, Plaintiff complained of any discrimination and/or harassment, whether or not there is a causal connection between any such complaint and adverse employment action.

28. Whether, upon hearing of Plaintiff's complaints alleging inappropriate activity, Defendant investigated and took prompt remedial action reasonably designed to correct and prevent such conduct in the future.

## IX. Trial Exhibit Lists

1. Plaintiff's Trial Exhibit List is attached hereto as Exhibit A.

2. Defendant's Trial Exhibit List is attached hereto as Exhibit B.

## X. Witness Lists

1. Plaintiff's Witness List is attached hereto as Exhibit C.

2. Defendant's Witness List is attached hereto as Exhibit D.

## XI. Estimated Trial Time

The parties estimate that the trial of this matter will take five to 10 days.

## XI. Estimate of Each Party as to the Maximum Amount of Attorneys' Fees Properly Allowable

**Plaintiff**

**Defendant**

Defendant estimates the maximum amount of Attorneys' fees properly allowable to be $0.

Dated: September 16, 2010

Respectfully submitted,

_____
Marlenis Smart, Pro Se
540 Grand Concourse,
Miami Shores, FL 33138
Tel: 305 751-8127
mfiresmart@comcast.net

_____
Susan Potter Norton, Esquire
Florida Bar No. 0201847
snorton@anblaw.com
Brigid A. Patrick, Esquire
Florida Bar No. 0079048
bpatrick@anblaw.com

Allen, Norton & Blue, P.A.
121 Majorca Avenue, Suite 300
Coral Gables, Florida 33134
Tel:   305-445-7801
Fax:  305-442-1578
Attorney for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2011, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that participants in the case identified on the attached Service List who are registered CM/ECF users will be served via transmission of Notices of Electronic Filing generated by CM/ECF. I further certify that some of the participants in the case identified on the attached Service List are not registered CM/ECF users. Accordingly, I certify that I have mailed the foregoing document to the non-registered users by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days.

/s. Susan Potter Norton
Attorney

135870-1

## SERVICE LIST

Marlenis Smart
540 Grand Concourse,
Miami Shores, FL 33138
Tel: (305) 751-8127
mfiresmart@comcast.net
Pro se Plaintiff
Via U.S. Mail

Susan Potter Norton, Esquire
snorton@anblaw.com
Brigid A. Patrick, Esquire
bpatrick@anblaw.com
ALLEN, NORTON & BLUE, P.A.
121 Majorca Avenue
Coral Gables, Florida 33134
Tel: (305) 445-7801
Fax: (305) 442-1578
Counsel for Defendant

Rob Rosenwald
robrosenwald@miamibeachfl.gov
Senior Assistant City Attorney
OFFICE OF THE CITY ATTORNEY
1700 Convention Center Drive
Miami Beach, FL 33139
Tel: 305-673-7000
Fax: 305-673-7002
Counsel for Defendant

135883-1