# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 10-21667-CIV-COOKE/TURNOFF

MARLENIS SMART,

      Plaintiff

vs.

CITY OF MIAMI BEACH, FLORIDA,

      Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before me on Defendant's Motion for Summary Judgment (ECF No. 52). I have reviewed the arguments, the record, and the relevant legal authorities. For the reasons stated below, the Motion for Summary Judgment is granted in part and denied in part.

### I. BACKGROUND

In January 2005, the City of Miami Beach hired Marlenis Smart ("Smart") as a firefighter and paramedic for the City of Miami Beach Fire Department (the "Fire Department"). (Pl.'s Second Am. Compl. ¶ 20, ECF No. 40). Smart claims that throughout her employment with the Fire Department, she has been the subject of comments that criticize her on the basis of her gender. (*Id.* at ¶ 21). On her first day of training, Smart was introduced to her coworkers as someone who took the job as a hobby because her husband's financial situation precluded her from needing to work. (*Id.*) Fire Department employees circulated rumors of Smart's alleged participation in extramarital affairs with several male coworkers. (*Id.* at ¶¶ 25, 34, 41, 48).

Because of these rumors, Smart began to feel uncomfortable and hesitant when interacting with male colleagues, some of whom openly refused to work with her.  (*Id*. at ¶ 50).

In her second amended complaint, Smart describes several specific instances of discrimination and harassment.  In April 2005, Smart was told she "should be home in the kitchen cooking," and that she would be made an "example of a poor performing female."  (*Id*. at ¶ 25).  She found one of her bathing suits in a coworker's locker stained with what appeared to be semen.  (*Id*.)  Also, upon her assignment to a new station, Smart was told she "was not going to . . . skate around here like all the other girls."  (*Id*. at ¶ 27).

In January 2006, Smart was accused of lying on her job application by neglecting to include that she had surgery to remove significant body parts.  (*Id*. at ¶ 30).  That same month, Smart claims that she overheard herself referred to as "a stupid bitch" by a superior.  (*Id*. at ¶ 32).  In March 2006, after Smart was assigned to a new station, Smart's bra was removed from her bag and hung on a chair.  (*Id*. at ¶ 34).  Personal items were also stolen from Smart's locker in August 2006.  (*Id*.). In September 2006, a superior asked Smart if she had ever used steroids because "he had never seen a woman so strong."  (*Id*.).  In February 2007, Smart's immediate supervisor gave her a favorable performance evaluation, but it was subsequently changed to reflect inadequate performance.  (*Id*. at ¶ 37).  In or around July 2007, a superior described Smart's manner of dress as "promiscuous."  (*Id*. at ¶ 41).  Smart also alleges that the Fire Department did not make a timely effort to install a lock on a female bathroom shower or provide shower curtains after an incident in which a male coworker walked in on her while she showered.  (*Id*. at ¶¶ 42-45).  Instead of installing a lock, Smart was provided with a broom handle with her name on it to lock the door.  (*Id*.)

Smart further claims that the Fire Department unjustly enrolled her in remediation classes after a rescue call she led resulted in the paralysis of the patient.  (*Id*. at ¶ 57).  An investigation of the incident followed and Smart was placed on administrative suspension while the male coworkers that accompanied her on the rescue call were not.  (*Id*. at ¶¶ 58-61).  In May 2008, Smart was denied an assignment that was given to a male colleague.  (*Id*. at ¶ 65).  On August 15, 2008, Smart received a flyer that featured her photograph with the words "Next Fire Last Fire Liar" with an "X" drawn over her face, which she interpreted as a death threat.  (*Id*. at ¶ 68).  She claims that the Fire Department precluded her from taking a test required for promotion because a superior intentionally lost her employment file.  (*Id*. at ¶ 71).  In August 2009, while she was pregnant, the Chief of Support Services told Smart to park in a handicapped spot.  (*Id*. at ¶ 73).  When coworkers learned of this accommodation, they threatened to call the police, and Smart was no longer permitted to use the space.  (*Id*.).

On February 2, 2008, Smart was hospitalized due to chest pains she attributes to the stress of her work environment.  (*Id*. at ¶¶ 54).  In addition to negative impacts on her physical health, Smart claims that her work environment caused her severe emotional distress, to the point where she was forced to take administrative leave.  (*Id*. at ¶¶ 50, 64).  On March 21, 2008, Smart filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was the victim of sexual harassment, gender-based discrimination, and retaliatory discipline.  (*Id.* at ¶ 62).  On February 22, 2010, the Civil Rights Division of the U.S. Department of Justice issued Smart a Notice of the Right to Sue.  On April 1, 2011, Smart filed a six-count Second Amended Complaint with this Court against the Fire Department. Counts I through III allege that Smart experienced sexual harassment (Count I), gender discrimination (Count II), and retaliation (Count III) in violation of Title VII of the Civil Rights

Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq*., and of the Florida Civil Rights Act of 1992, § 760.01 *et seq*., Fla. Stat. (2011) ("FCRA").  Counts IV through VI allege Smart was the victim of sexual harassment (Count IV), gender discrimination (Count V), and retaliation (Count VI) in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983.  Smart seeks injunctive relief, compensatory and punitive damages, declaratory judgment, and equitable relief in the form of discipline or discharge of Fire Department employees.

The Fire Department has moved for summary judgment on all of Smart's claims.  It argues that the claims are time-barred because the discrete acts Smart complains of took place outside the statutory filing periods imposed by Title VII, and that the sexual harassment claim lacks the degree of severity and pervasiveness required by law.  The Fire Department asserts that the gender discrimination and retaliation claims fail as a matter of law because the Fire Department's actions were, at all times, based on legitimate, non-discriminatory reasons.  The Fire Department also alleges that Smart's § 1983 claims fail as a matter of law because Smart cannot establish the requisite municipal liability.  Although Smart currently has counsel, Smart opposed the Fire Department's motion for summary judgment as a *pro se* litigant.[1]

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" when it relates to substantive law at issue in the case and may affect

---

[1] A *pro se* litigant's pleadings must be construed more liberally than pleadings drafted by attorneys.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see also Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) ("*pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.").  However, "this leniency does not give a court license to serve as *de facto* counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action."  *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).

the outcome of the nonmoving party's claim.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).  An issue of fact is "genuine" if the record taken as a whole could lead a rational

trier of fact to find for the nonmoving party.  *Id.*  Rule 56(c) "requires the nonmoving party to go

beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories,

and admissions on file, designate specific facts showing that there is a genuine issue for trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotations omitted).   The

nonmoving party "may not rest upon the mere allegations or denials of [her] pleading, but . . .

must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S.

at 248.  The court must view the evidence in the light most favorable to the nonmoving party.

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

## III.  ANALYSIS

### A.  *Count I – Hostile Work Environment Sexual Harassment Under Title VII and the FCRA*

Smart alleges that she was subjected to hostile work environment sexual harassment in

violation of Title VII and the FCRA.[2]   Title VII prohibits employment practices that

"discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's race, color, religion, sex, or national

origin . . ." or "limit, segregate, or classify [] employees . . . in any way which would deprive or

tend to deprive any individual of employment opportunities or otherwise adversely affect his

status as an employee, because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e-2(a)(1)-(2).  Claims filed under Title VII must be made within 180 days after

the alleged unlawful employment practice occurred, or by the State or local agency with the

---

[2] The FCRA was patterned after Title VII, and courts have construed the act in accordance with decisions of federal courts interpreting Title VII.  *Wilbur v. Corr. Servs. Corp.*, 393 F.3d 1192, 1195 n.1 (11th Cir. 2004).

authority to seek relief within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). In other words, "[i]n a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).[3]

### 1. Smart's Hostile Work Environment Sexual Harassment Claims are Timely

The Fire Department argues that Smart's claims are time-barred because the alleged unlawful employment practices took place outside of Title VII's statutory filing period. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. Discrete acts include termination, failure to promote, denial of transfer, or refusal to hire. *Id*. at 114. Hostile environment claims, however, are different from discrete acts because they involve repeated conduct. *Id*. at 115. "The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id*.; *see Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

"Workplace conduct is not measured in isolation." *Morgan*, 536 U.S at 116 (quoting *Clark Cnty. School Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (*per curiam*). Hostile environment claims are based on the cumulative effect of individual acts. *Id*. at 115. "It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period." *Id.* at 117. As long as an act contributing to

---

[3] The FCRA provides 365 days for filing claims. § 760.11(1), Fla. Stat. (2010).

the claim occurs within the statutory time period, the entire time period of the hostile environment may be considered for the purposes of determining liability. *Id.* "In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." *Id.* at 118. Smart filed her formal charge of discrimination with the EEOC on March 21, 2008. The formal charge of discrimination was filed 142 days after Smart alleged to have received sex-specific derogatory remarks in November 2007. This allegation alone is sufficient to establish a timely claim of hostile work environment sexual harassment, and this Court may consider other alleged acts of discrimination, even if they fall outside of the statutory period. *See Morgan*, 536 U.S. at 117-18. Any discrete allegations of discrimination that occurred prior to March 21, 2007, however, are time-barred.

### 2. *Smart Has a Viable Sexual Harassment Claim Against the Fire Department*

Hostile environment sexual harassment occurs when an employer's conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986) (quoting 29 C.F.R. § 1604.11(a)(3)).[4] To establish a hostile work environment sexual harassment claim under Title VII, an employee must show (1) that she belongs to a protected group; (2) that she has been subject to unwelcome sexual harassment; (3) the harassment was based upon sex; (4) the harassment was sufficiently severe or pervasive to alter the terms or conditions of employment and create an abusive working environment; and (5) there is a basis for holding the employer liable. *Henson v. City of Dundee*, 682 F.2d 897, 903-05

---

[4] While Title VII does not explicitly mention sexual harassment, the Supreme Court recognizes that "[t]he phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment." *Vinson*, 477 U.S. at 64 (some internal quotation marks omitted). This includes situations where discrimination based on sex creates a hostile or abusive work environment. *See id.* at 66.

(11th Cir. 1982).  The Fire Department argues that Smart cannot, as a matter of law, establish the fourth or fifth elements of her sexual harassment claim.

### (4) The Severity of the Alleged Harassment

The severity of a sexual harassment claim is comprised of a subjective and objective component.  *Harris*, 510 U.S. at 21-22.  The employee must subjectively perceive the harassment to be sufficiently severe and pervasive as to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable.  *Id.* Smart alleges that she experienced emotional distress at home and at work because of the alleged harassment and because many of her male colleagues openly refused to work with her, causing Smart to second guess all interaction and correspondence with male coworkers.  Viewing the facts in the light most favorable to Smart, she subjectively perceived the alleged harassment to be severe.

The determination as to whether an environment is objectively "hostile" can be made by looking at the following non-exclusive set of factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 647 (11th Cir. 1997) (citing *Harris*, 510 U.S. at 23).  The environment must be one that a reasonable person would find hostile or abusive.  *Harris*, 510 U.S. at 21.  "The courts should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment."  *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999).  Considering the totality of the circumstances, the conduct

alleged is sufficiently severe or pervasive to alter the terms or conditions of Smart's employment and to create a hostile or abusive environment.

The second amended complaint asserts that the Fire Department's harassing misconduct occurred during a span of approximately five and a half years—from January 2005, when Smart began training, to May 2010.  Smart alleges twenty discrete examples of harassing conduct over this time period, but she does not identify a specific date for most of the alleged incidents.  Of the twenty alleged incidents, nine are readily ascribable to her sex: four occasions where sex-specific comments were made toward her or within earshot; the bathing suit incident; the bra incident; her superior referring to her clothing as "promiscuous"; the shower incident; and the parking spot incident, which occurred while she was pregnant.  These comments and this behavior, though reprehensible, are relatively infrequent.  *See Mitchell v. Pope*, 189 F. App'x 911, 913-14 (11th Cir. 2006) (holding conduct toward female sheriff's office employee "not that frequent" where plaintiff alleged sixteen instances of offensive conduct occurring over four years); *see also Murphy v. City of Aventura*, 616 F. Supp. 2d 1267, 1275-76 (S.D. Fla. 2009), *aff'd*, 383 F. App'x 915 (11th Cir. 2010) (holding that allegations of nine sex-specific comments, made over a period of two years and eight months, were too infrequent to be actionable).

While Title VII is not intended as a "general civility code," the objective severity of a harassment inquiry "requires careful consideration of the social context in which particular behavior occurs and is experienced by its target."  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).  "Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing . . . and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive."  *Id.* at 82.  An unknown male touched Smart's bra.  An unknown male entered the female bathroom

while Smart was showering.  Smart's bathing suit went missing for a period of time, and was eventually found in another coworker's locker bearing what Smart believed was a semen stain. Rumors spread alleging Smart engaged in acts of sexual impropriety and adultery with her male coworkers.  The Fire Department claims that, at the time the shower incident occurred, the stationhouse was not yet outfitted with shower curtains but that shower curtains were available to firefighters upon request. Smart is not the Fire Department's first female firefighter, nor will she be the last.  It is appalling that, in today's society, any woman would be subjected to unwelcomed indecent exposure because a work environment is not equiped to accommodate female employees.  In response to the allegation that rumors circulated about Smart engaging in extra-marital affairs, the Fire Department asserts that one of Smart's supervisors engaged in conduct that caused others to question his relationship with Smart.  Notwithstanding the Fire Department's defensive posture regarding these two allegations, the harassment complained of, particularly when considered in the context of a majority-male work environment, is severe.

The third factor for consideration is whether the alleged conduct was physically threatening or humiliating.  *Allen*, 121 F.3d at 647.  Smart does not allege that direct, face-to-face physical threats were made against her.  It takes no stretch of the imagination, however, to believe that a reasonable person would feel physically threatened upon the discovery of a flyer with an "X" drawn over her face, accompanied with the words, "Next Fire Last Fire Liar." Indeed, Smart took this to be a death threat.  Beyond mere concern for her safety, Smart alleges to have repeatedly been subjected to derogatory remarks about her appearance, the victim of perverse invasions of privacy and questioned about her marital fidelity.  While each individual allegation may not rise to a sufficient level of "humiliation", there is little doubt that Smart's allegations, in the aggregate, are objectively humiliating.

The last factor to be considered is whether the alleged conduct unreasonably interfered with Smart's job performance.  *Allen*, 121 F.3d at 647.  The record contains references to several instances in which Smart complained to her superiors about incidents of harassment or perceived discrimination. Smart claims to have suffered emotional distress both at work and at home.  She alleges that the hostile work environment to which she was subjected led to her hospitalization and to her taking administrative leave.  She claims her job performance suffered due to newfound difficulty interacting with colleagues and lack of cooperation from coworkers on several occasions.  Although Smart has continued her employment with the Fire Department, there is an issue of material fact as to whether her job performance overall has been adversely affected by the alleged acts of harassment.

### (5)  *The Basis of The Fire Department's Liability*

The Fire Department argues that, even if the alleged harassment were sufficiently severe and pervasive, it is nevertheless entitled to summary judgment because Smart is unable to establish a basis for its liability.  To prove that an employer is indirectly liable for hostile work environment sexual harassment, an employee must show that the employer knew or should have known of the harassment in question and failed to take prompt remedial action to remedy the violation.  *Henson*, 682 F.2d at 905.  The employee can show that the employer had knowledge of the harassment by "proving that she complained to higher management of the problem or by demonstrating that the harassment was so pervasive that an inference of constructive knowledge arises."  *Huddleston v. Roger Dean Chevrolet, Inc.*, 845 F.2d 900, 904 (11th Cir. 1988).

Smart argues that the Fire Department failed to exercise reasonable care to prevent and correct the behavior alleged in her complaints of sexual harassment.  She asserts that she complained about sexual harassment and discrimination from as early as her initial training

period in 2005.   Smart also claims she complained to her superiors after the March 2006 incidents.  According to Smart, the Fire Department did not conduct an investigation about these alleged incidents, nor did it take any disciplinary action against any of the alleged offenders. While Smart acknowledges that the Fire Department addressed the bra incident, she claims that she was never advised of the outcome.  Smart further alleges that the Fire Department did not install a bathroom lock until ten months after she complained of the lack of privacy in the female bathrooms.   On January 3, 2008, Smart filed a formal written complaint concerning gender discrimination, sexual harassment, and retaliation with the division chief, who said that the human resources department was interested in mediating her complaint.   Again, Smart alleges that she was never advised that an investigation commenced, and that none of the males addressed in her complaint were disciplined.

The Fire Department seeks to invoke the *Faragher-Ellerth* affirmative defense, which looks to the reasonableness of the employer's conduct in seeking to prevent and correct harassing conduct.   *See generally Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).  To successfully establish this defense, the Fire Department must establish that (1) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior and (2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the Fire Department or to avoid harm otherwise.  *Faragher*, 524 U.S. at 807.  To meet the requirement of demonstrating reasonable care in preventing sexual harassment, it is fundamental that the employer distributes an anti-harassment policy.  *See Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1299 (11th Cir. 2000); *see also Faragher*, 524 U.S. at 807  ("While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter

of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense.").

The Fire Department has a "no tolerance" policy prohibiting sexual harassment.  All new hires are provided with an employee handbook that contains procedures for filing a sexual harassment complaint.  The parties do not dispute that Smart attended sexual harassment training, however, the mere existence of a policy does not by itself trigger the affirmative defense.  Although an employer may exercise reasonable care to prevent harassment, if the employer becomes aware of harassment, "it is liable unless it t[akes] prompt corrective action." *Madray*, 208 F.3d at 1299.  The Fire Department contends that it conducted a prompt and thorough investigation in response to Smart's formal complaint of discrimination and harassment.  The record is inconclusive, however, as to when the Fire Department was put on notice of Smart's initial complaints of harassment.  There is, therefore, an issue of material fact as to whether the Fire Department exercised reasonable care in promptly correcting the alleged sexual harassment.

Even if the Fire Department had successfully established the first element of the *Faragher-Ellerth* affirmative defense, there is an issue of material fact as to whether Smart unreasonably failed to use preventative or corrective measures to address her adverse work environment.  The Fire Department asserts that Smart declined to participate in non-binding mediation to resolve a conflict between herself and a coworker, and that she did not use the available grievance and arbitration procedures to respond to her suspension.  There is no indication that the grievance procedure was mandatory.  It is equally unclear whether it was unreasonable for Smart to decline to enter into non-binding mediation or decline to avail herself

of procedural remedies provided by the Fire Department.[5]  Because there are multiple issues of material fact as to whether Smart was subjected to hostile work environment sexual harassment, the Fire Department's motion for summary judgment as to Count I is denied.

**B.  *Counts II & III – Gender Discrimination and Retaliation Under Title VII and the FCRA***

> ### 1. Gender Discrimination

Title VII claims are evaluated according to the type of evidence presented by the plaintiff.  *See Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999).  Direct evidence of discrimination is defined as "evidence which reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'"  *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (quoting *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1998)).  Direct evidence is evidence that, if believed, proves existence of a fact without inference or presumption.  *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997).  Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor, constitute direct evidence of discrimination.  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004); *see also Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989).  Smart does not provide direct evidence of discrimination.  Allegations that her supervisor placed her in remediation classes, suspended her, and offered a position to a male colleague for which she also applied does not prove discrimination "without inference or presumption." *See id.*  Rather, Smart's gender discrimination claim suggests, but does not prove, a discriminatory motive, and therefore relies upon circumstantial evidence.  *See Burrell*, 125 F.3d at 1393.

---

[5] Smart declined to participate in mediation because the other party was represented by legal counsel while she was not.

A plaintiff may establish a prima facie case of gender discrimination on a failure to promote claim by showing that (1) she is a member of a protected class; (2) she was qualified and applied for the promotion; (3) she was rejected despite her qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted. *Wilson*, 376 F.3d at 1089 (citing *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000)); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).   Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally.  *Wilson*, 376 F.3d at 1087; *see also Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997).   Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  *Combs*, 106 F.3d at 1528.  "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it as pretext for discrimination."  *Wilson*, 376 F.3d at 1088.   In other words, a plaintiff must submit evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons" for the employment action.  *Perrero v. Spectator Mgmt. Group*, 308 F. App'x 327, 329 (11th Cir. 2009) (quoting *Chapman v. A.I. Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000).  This evidence may include the same evidence initially offered to establish the prima facie case of discrimination. *Wilson*, 376 F.3d at 1088.  "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 733 (7th Cir. 2011)).

Smart claims that she was subjected to gender discrimination when she was denied certain fire station assignments and assigned to more "onerous" fire stations. (Pl.'s Second Am. Compl, ¶ 93). It is undisputed that Smart was a qualified applicant for the assignment, was not hired, and that the assignment was given to a male. It is also undisputed that the Fire Department's bid system for shift assignments is based on seniority, and that the male who filled the position was Smart's senior. (Smart Dep. 180:2-182:2; Declaration of Javier Otero ¶¶ 34-35). Smart has proffered no evidence that the Fire Department's actions were a pretext for unlawful gender discrimination. The Fire Department has provided a legitimate, nondiscriminatory reason for denying Smart's assignment application. Accordingly, summary judgment is granted as to Count II.

### 2. Retaliation

The Fire Department suspended Smart for ten shifts in June 2008. Smart alleges she was suspended in retaliation for her complaints of sexual harassment and gender discrimination. Title VII makes it unlawful for an employer to retaliate against an individual who opposes an unlawful employment practice. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must prove that (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) there is a causal link between the two. *Dixon v. The Hallmark Companies, Inc.*, 627 F.3d 849, 856 (11th Cir. 2010) (citations omitted). "To meet the causal link requirement, the plaintiff 'merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997) (quoting *E.E.O.C. v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993)). "The plaintiff must at least establish that the employer was actually aware of the protected expression at the time the employer took

adverse action against the plaintiff." *Id.* (citing *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993). Even where the employment practice is not unlawful on its face, a plaintiff may establish a prima facie case of retaliation "if [she] shows that [she] had a good faith, reasonable belief that the employer was engaged in unlawful employment practices… A plaintiff must not only show that [she] *subjectively* (that is, in good faith) believed that [her] employer engaged in unlawful employment practices, but also that [her] belief was *objectively* reasonable in light of the facts and record presented." *Dixon*, 627 F.3d at 857 (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997) (emphasis in original). Once a plaintiff establishes a prima facie case of retaliation, the employer must proffer a legitimate, nondiscriminatory reason for the adverse employment action. *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009). If the employer offers legitimate reasons for the employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation. *Id.*

The Fire Department argues that Smart did not bring her complaints of discrimination and/or harassment to its attention until after it initiated the investigation that ultimately led to Smart's suspension. I disagree. Smart alleges that she complained of harassing behavior in as early as 2005. The record indicates that Smart brought verbal complaints to the attention of Battalion Chief John Jaremko on January 3, 2008. (ECF No. 76, Ex. A). The chronological timeline of events raises an issue of material fact as to whether the Fire Department was aware of Smart's claims when she was disciplined. On or about January 14, 2008, Smart revised a rescue call patient care report that she provided to Mount Sinai Hospital emergency room personnel. On January 15, 2008, the Fire Department's medical director received an email from Mount Sinai's Chief of Emergency Medicine asking for a review of the patient's case. On February 6,

2008, the Fire Department's medical director advised the Fire Chief of his findings and recommendations regarding the poor quality of patient care each paramedic, including Smart, provided on the rescue call.  That letter recommended that Smart's actions be thoroughly investigated.  On February 7, 2008, the Fire Chief forwarded each paramedic a copy of the medical director's letter, and advised them that they would each be re-assigned to day shifts for remedial training.  There is, however, a record discrepancy between the letter the Fire Chief received and the letter forwarded to Smart, which does not include an investigation recommendation.

On February 8, 2008, as a follow-up to her January verbal complaint, Smart also filed a written complaint with the Fire Department.  On March 19, 2008, Assistant Chief Javier Otero submitted a written response to Smart's verbal and written complaints.  Assistant Chief Otero noted that the incidents Smart complained of "have cumulatively created a hostile work environment and need to be corrected immediately before they escalate."  (ECF No. 76, Ex. A).  On February 28, 2008, Captain Eric Yuhr submitted a report on the investigation into Smart's actions regarding the patient care report.  Smart filed her formal charge of discrimination on March 21, 2008.  On April 17, 2008, Smart was served with a Notice to Discipline, which recommended her termination.   On May 15, 2008, following a pre-determination hearing regarding the patient care report, Smart was notified that she would be suspended, effective for the month of June 2008.  The Fire Department argues that Smart's suspension was based on a legitimate, non-retaliatory reason – Smart's unauthorized revision of a patient care report.  Although Smart's suspension may indeed be lawful and within the bounds of the Fire Department's employee disciplinary authority, I believe that the factual timeline, the circumstantial evidence, Smart's subjective belief of retaliation, and the objective reasonableness

of that belief, warrant a finding that Smart has established a prima facie case of retaliation.[6]

Summary judgment as to Count III is denied.

### C. *Counts IV-VI – 42 U.S.C. § 1983 Claims*[7]

Smart claims that the Fire Department deprived her of her constitutional rights by "suspending, disciplining, and failing to promote" Smart and by "turning a blind eye" to the action of sexual harassment and gender discrimination made against her.  (Pl.'s Second Am. Compl. ¶¶ 103, 108, 113).  42 U.S.C. § 1983 makes it unlawful for government employees or municipalities to deprive an individual of her rights under the constitution.  *See* 42 U.S.C. § 1983.  "To prevail on a claim under § 1983, a plaintiff must demonstrate both (1) that the defendant deprived her of a right secured under the constitution or federal law and (2) that such a deprivation occurred under color of state law.  *Arrington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir. 1998).  Allegations of Title VII violations, such as retaliation, cannot support a § 1983 claim.  *Id.*  Allegations that a municipal employee was subject to unlawful sex discrimination and sexual harassment, however, can provide a basis for a § 1983 violation.  *Cross v. Ala. Dep't*

---

[6] There is also an issue of material fact as to whether Smart received adequate training on how to properly prepare an addendum to a patient care report.

[7] "Section 1983 claims are tort actions, subject to the statute of limitations governing personal injury actions in the state where the [Section] 1983 action has been brought."[7] *DeYoung v. Owens*, 646 F.3d 1319, 1324 (11th Cir. 2011).  Under the Florida Statutes, the statute of limitations applicable to Smart's Section 1983 claims is four years.  *See* Fla. Stat. §§ 95.11(3)(a) (statute of limitations other than for the recovery of real property).  In Section 1983 cases, "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987) (internal quotation marks and brackets omitted).  The time of accrual is when the plaintiff knows or has reason to know of the injury which is the basis of the action.  *Calhoun v. Ala. Alcoholic Beverage Control Bd.*, 705 F.2d 422, 424 (11th Cir. 1983).  The earliest injury alleged in Smart's complaint occurred on her first day of training in January 2005.  Her complaint was filed with the Court on May 21, 2010.  Applying the four-year statute of limitations to her Section 1983 claims, any of her factual allegations occurring prior to May 21, 2006, are time-barred.

*of Mental Health & Mental Retardation*, 49 F.3d 1490, 1507 (11th Cir. 1995) (public employees have a constitutional right to be free from unlawful sex discrimination and sexual harassment).

"[A] municipality may be held liable under § 1983 only when the [constitutional] deprivation at issue was undertaken pursuant to city 'custom' or 'policy' and not simply on the basis of respondeat superior." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479 (11th Cir. 1991); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690-691 (1978). In other words, liability will found only where a plaintiff can establish that the acts giving rise to the constitutional injury was the result of (1) "an official government policy"; (2) "the actions of an official fairly deemed to represent government policy"; or (3) "a custom or practice so pervasive and well-settled that it assumes the force of law." *Denno ex. Rel Denno v. Sch. Bd. of Volusia Cnty., Fla.*, 213 F.3d 1267, 1276 (11th Cir. 2000).

Smart fails to identify a "custom or policy" that gave rise to her allegations of sexual harassment and discrimination. At all times material to this claim, the Fire Department's official policy has been that sexual harassment and discrimination are prohibited in the workplace. Smart acknowledges that the Fire Department maintained a sexual harassment policy and established procedures for filing complaints and grievances. There is no evidence of the promulgation of an official policy inconsistent with the Fire Department's established proscriptions against discrimination and harassment. Smart has not alleged that other Fire Department employees have been subjected to similar treatment, nor do Smart's allegations themselves establish a sufficient custom or policy of harassment. *See Buzzi v. Gomez*, 62 F. Supp. 2d 1344, 1360 (S.D. Fla. 1999) (holding that five incidents which occurred over a three-year period are "isolated and dispersed" and "insufficient to substantiate the existence of a widespread custom violative of §1983); *see also Preito v. Metro. Dade Cnty.*, 718 F. Supp. 934,

938-39 (S.D. Fla. 1989) ("four isolated incidents involving only [plaintiff] fall well short of proving a persistent and widespread practice sufficient to establish a policy or custom.").  There is no issue of material fact as to Smart's inability to establish a custom or policy of unlawful conduct by the Fire Department.  Summary judgment is granted as to Counts IV, V and VI.

### IV.  CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** that the Fire Department's Motion for Summary Judgment is **GRANTED** *in part* and **DENIED** *in part*.  This case shall proceed to trial on Smart's claims of hostile work environment sexual harassment (Count I) and retaliation (Count III).

**DONE and ORDERED** in chambers at Miami, Florida this 16th day of November 2011.

*Marcia G. Cooke*
_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of Record*