UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 10-21667-CV-COOKE/TURNOFF

MARLENIS SMART,

    Plaintiff,

vs.

CITY OF MIAMI BEACH, FLORIDA,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Removal of Garnishment **[DE241]**, Plaintiff's Motion to Dismiss Writ of Garnishment **[DE253]**, and an Order of Referral entered by the Honorable Marcia G. Cooke. **[DE245]**. A hearing on these matters took place before the undersigned on September 15, 2014. **[DE249]**. Upon review of the Motions, the Responses, the supplemental filings, hearing argument from counsel, and being otherwise duly advised in the premises, the undersigned makes the following findings.

### Background

This case was tried before Judge Cooke in March 2012. The trial resulted in a verdict for Plaintiff Marlenis Smart ("Plaintiff") in the amount of $700,000. **[DE154]**. Judge Cooke heard post trial motions on or about October 2, 2012. **[DE215]**. On March 26, 2013, she granted Defendant's Renewed Motion for Judgment as a Matter of Law. **[DE218]**. In doing so, the judge noted that the jury lacked "a legally sufficient evidentiary basis to find for Ms. Smart." Id. She explained that her findings "neither justify the firemen's behavior [nor] minimize what Ms. Smart had to endure; it is simply a statement that the facts, as presented by Ms. Smart, do not legally constitute sexual

harassment that is severe or pervasive, and therefore actionable under Eleventh Circuit jurisprudence." Id.[1] Plaintiff filed an appeal in the 11th Circuit. **[DE219]**.

In the interim, while the appeal was pending, on April 17, 2013, Defendant filed an Unopposed Motion to Tax Costs **[DE222]**. Same was referred[2] to the undersigned on April 18, 2013. **[DE223]**. In support of the Unopposed Motion, Defendant submitted its original Bill of Costs (Form AO133), together with a stipulated reduction. A review of same reflects that the City agreed to accept $26,271.33, an amount that is significantly less than the $64,434.24 it had originally requested. The undersigned entered an Order granting the unopposed Motion on April 25, 2014, and ordered that the execution be stayed pending the outcome of the appeal. **[DE225]**. On August 4, 2014, the 11th Circuit issued its Mandate affirming Judge Cooke's ruling. **[DE235]**. A Motion for Writ of Garnishment by the City followed on August 20, 2014. **[DE236]**. The Writ was issued on that same day. **[DE237]**. The Garnishee, Power Financial Credit Union, filed its Answer on September 10, 2014, indicating that it had frozen $10,522.19.[3] **[DE239]**. Judge Cooke lifted the stay on September 11, 2014. **[DE243]**.

---

[1]Defendant presented evidence – post trial – that indicated that Plaintiff and her mother attempted to tamper with at least one witness. Judge Cooke specifically noted as much in her post-trial Order, i.e., "these facts clearly demonstrate that Ms. Smart and Ms. Cruz[her mother], in bad faith, sought to disrupt and undermine the proceedings by manipulating Firefighter Kokoram into failing to appear for trial and to have Firefighter Kokoram coerce Lieutenant Brown into testifying favorably for Plaintiff." **[DE218]**.

[2]In their Joint Scheduling Report, the parties represented that they agreed to "refer [all] cost-related motions to the Magistrate Judge." **[DE14]**.

[3]The Garnishee filed an Amended Answer on September 26, 2014. **[DE255]**. In the Amended Answer, the Garnishee states, among other things, that the funds in question were held in a joint account. **[DE255]**.

Plaintiff's Motion to Withdraw Writ of Garnishment was filed on September 10, 2014 **[DE241]**. It was referred to the undersigned on September 12, 2014. **[DE245]**. As noted above, the Court heard oral argument on September 16, 2014. **[DE249]**. At the conclusion of the hearing, the undersigned ruled from the bench and denied Plaintiff's Motion. On September 17, 2014, upon further consideration, the undersigned determined that a genuine issue may exist as to the status of Plaintiff's bank account and whether or not it was held as a joint account with her spouse, as tenants in the entirety. **[DE250]**. In light of same, the Court ordered additional briefing by all sides. Id. Plaintiff filed a memorandum and a separate Motion to Dissolve Writ of Garnishment on September 22, 2014. **[DE253]**. Defendant filed its opposition papers on September 24, 2014. **[DE254]**. The matter is now more than ripe for determination.

## Analysis

In her first Motion **[DE241]**, Plaintiff claims that she was never consulted as to the cost negotiations or the stipulation. In this connection, she claims that she did not become aware of the cost judgment until her account was garnished. According to Plaintiff, the account in question cannot be subject to garnishment, because, among other things, it is jointly held with her spouse, Darik Smart. She claims that the account is funded by an external JP Morgan Chase account that belongs only to Mr. Smart. She further claims that the frozen funds were earmarked for the payment of property taxes, her children's education, food and health insurance.[4] In support of the Motion, Darik Smart has provided a document titled "Declaration Under Penalty of Perjury." **[DE242]**. In sum, Plaintiff argues that: (1) she did not agree to the cost judgment, and that (2) the writ should

---

[4]The Smarts have four (4) children, one of whom is disabled. Plaintiff also testified that she is unemployed and currently separated from her spouse.

be dissolved because the funds in the joint account do not belong to her.

In her second Motion **[DE253]**, she argues that the writ should be dissolved because Defendant failed to comply with the notice requirements in Fla. Stat. § 77.041 and § 77.055. She also argues that in Florida, a tenancy in the entireties is presumed in jointly titled marital bank accounts. Defendant, on the other hand, argues that notice was not required because Darik Smart's name was not initially disclosed in the Answer to the Writ of Garnishment. **[DE254]**. Defendant also argues that Plaintiff's addition of Mr. Smart to the account, years later, in 2009 did not create a tenancy by the entireties. Consistent with the foregoing, the undersigned agrees.

*Notice Requirements*

At the hearing, both Plaintiff and Mr. Smart testified under oath. Both generally testified consistent with what was stated in their pleadings. In addition, Plaintiff testified that she opened the account in question on March 19, 1998 in her own name. She was single at the time. She married Darik Smart later that year in December 1998. Hrg Tr. 17:2-3, Sept. 15, 2014. **[DE251]**; see also Marriage License Bureau records. **[DE254, Ex. E]**. However, the signature cards show that he was not added to the account until November 12, 2009. Id. at Ex. D.

Fla. Stat. § 77.04 provides that upon service of a writ of garnishment, a garnishee, in this case Power One, is required to serve an Answer within twenty (20) days of having received the writ. Fla. Stat. § 77.04. Under the statute, the garnishee must advise if it "knows of any other person indebted to defendant, or who may have any of the property of [D]efendant in his or her possession or control." Id. Defendant must then serve a copy of the Answer upon Plaintiff, and provide her with notice of, among other things, the deadline to move to dissolve the writ. Fla. Stat. § 77.055. The statute requires service at Plaintiff's last known address and/or any other address disclosed by

4

the garnishee's answer. Defendant must also serve copies of the documents upon any other person disclosed in the garnishee's answer as having any ownership interest in the deposit, account, or property controlled by the garnishee. Fla. Stat. § 77.055. Here, as previously noted, the initial Answer was filed by Power One on September 12, 2014. **[DE39]**. At the time, Darik Smart was not disclosed as having any ownership in the account. In fact, it was not until after the hearing before the undersigned, on September 26, 2014, that Power One disclosed Darik Smart's interest in the account. **[DE255]**.

Because he was not disclosed at the outset, Defendant was not required to provide him with notice. Therefore, there can be no finding of improper notice. Further, while Mr. Smart did not have standing to petition for the dissolution of the writ, Fla. Stat. § 77.16 permits him to file an affidavit claiming ownership to the funds in question. Because he submitted a declaration, and was given an opportunity to provide testimony, and did provide testimony, he has suffered no prejudice.

*Tenancy by the Entireties*

As a general matter, Plaintiff is correct that a creditor cannot reach property held as tenants by the entireties to satisfy the individual debt of one spouse. Bernal v. All American Investment Realty, Inc., 2009 WL 586010, at *5 (S.D. Fla. Mar. 6, 2009)(citing In re Sherwin, 388 B.R. 411, 415 (Bankr.S.D.Fla.2008)). However, in Florida, in order to create a tenancy by the entireties ownership of a bank account, six unities must exist when the married couple opens the account. They are: (1) unity of possession (joint ownership and control); (2) unity of interest (must be identical); (3) unity of title (interest must have originated in the same instrument); (4) unity of time (the interest must have commenced simultaneously); (5) survivorship; and (6) unity of marriage (the parties must be married at the time the property became titled in their names). Beal Bank, SSB v.

Almand & Assoc., 780 So. 2d 45, 53 (Fla. 2001) (citing First Nat'l Bank v. Hector Supply Co., 254 So.2d 777, 781 (Fla. 1971)). All six unities must exist when the married couple opens the account. In re Caliri, 347 B.R. 788, 798 (Bankr.M.D. Fla.2006)(the operative date for establishing ownership of a financial account is the date on which the account is opened or established). If any one of these unities never existed or was destroyed, there can be no entireties. United States v. One Single Family Residence Without Buildings Located at 15621 S.W. 209th Ave., Miami, Fla., 894 F.2d 1511, 1514 (11th Cir. 1990).

The decision in Aranda v. Seacoast National Bank, et al, 2011 WL 87237 (Bkrtcy.S.D.Fa. Jan. 10, 2011), a factually parallel case, is instructive. There, the account in question was opened on January 22, 2007, by the debtor/husband, as a single party account. Sometime later, on March 22, 2007, he added his wife to the account. The debtor/husband argued that their interest in the account arose at the same time, i.e., because when the wife was added they both simultaneously signed the second signature card. Id. The Court found the argument unpersuasive and held that the relevant time for establishing the unities of tenancies by the entireties was when the debtor/ husband first opened the account. In support of its conclusion, the Aranda court referenced the Florida Supreme Court's decision in Beal Bank. There, like in Aranda, the Court concluded that a bank account lacked the unities of time and title, because the husband opened the account alone and then later added his wife. Beal Bank, 780 So.2d at 49, n 2.

As stated above, as in Beal Bank and Aranda, Plaintiff opened the account in question on March 19, 1998 in her name only. **[DE254-2]**. The Smarts were not married until December 29, 1998. **[DE254-3]**. Mr. Smart was not added to the account until November 12, 2009, almost a decade later. **[DE254-4]**. Therefore, consistent with Florida law, the unities of time and title cannot

6

exist.

*Burden of Proof*

As a general matter, a debtor opposing garnishment proceedings has the burden of proving, by a preponderance of evidence that all, or part, of the money was not subject to garnishment, because it did not belong to him or her. Bernal, 2009 WL 586010, at *5.  Here, Plaintiff has failed to meet her burden. At the hearing, she testified that she deposited her salary during her employment with Defendant into that account. Hr'g Tr. 33:1-7. **[DE251]**. She also conceded that she deposited her severance funds, as well as her sick leave and vacation payout. Id. 44:1-18.  She likewise deposited funds from her *per diem* work at a hospital. Id. 34:24-25; 35:1-9.  She explained that she uses the account to pay for everyday expenses.

During the hearing, both Mr. and Mrs. Smart were questioned as to certain expenses and charges made from the Power One account that did not appear to be for basic needs. For example, Plaintiff was questioned on charges[5] incurred from Victoria's Secret, Elegant Beauty, Champs Sporting Goods, Starbucks, The Cheesecake Factory, and European Wax Center. See Hr'g Tr. 19:7-13, 20:13-18, 20:19-23, 21:2-9, and 22:17-23. **[DE251]**. Both of them recognized the charges as legitimate. In light of the above, it cannot be said that Plaintiff is not the owner of the account funds.

Lastly, the undersigned finds no merit in Plaintiff's assertion that she did not agree to the cost stipulation.  Suffice it to say that her attorney of record, Mr. Landers, negotiated an excellent discount on her behalf. As counsel of record, Mr. Landers had implicit authority to act on behalf of Plaintiff, and defense counsel had a right to rely on his representations.  Simply put, Plaintiff has

---

[5] These expenses were represented as being for the Smart children.

failed to meet her burden in all regards. Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion for Removal of Garnishment **[DE241]** and Plaintiffs' Motion to Dismiss Writ of Garnishment **[DE253]** are **DENIED**. Defendant is hereby instructed to submit a final cost judgment for the Court's review and signature within twenty-four (24) hours of the date of this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida on this 28 day of October 2014.

WILLIAM C. TURNOFF
UNITED STATES MAGISTRATE JUDGE

cc: Hon. Marcia G. Cooke
Counsel of Record